**OAK INDUSTRIES, Plaintiff,**

v.

**ZENITH ELECTRONICS CORPORATION,
Defendant.**

No. 86 C 4302.

United States District Court,
N.D. Illinois, E.D.

May 24, 1988.

James G. Hunter, Jr., David A. York, Steven B. Teplinsky, David S. Foster, Latham & Watkins, Chicago, Ill., for plaintiff.

John F. Flannery, Robert K. Schumacher, Fitch, Even, Tabin & Flannery, Chicago, Ill., John H. Coult, Zenith Electronics Corp., Glenview, Ill., Stuart Lubitz, Michael

---

Barclay, Spensley, Horn, Jubas & Lubitz, Los Angeles, Cal., for defendant.

## MEMORANDUM OPINION

GRADY, Chief Judge.

This patent infringement case comes before us on the defendant's motions: (1) to restrict plaintiff from introducing evidence of damages incurred prior to the patent's reexamination and (2) to compel the testimony of Daniel McEachran. We deny the motion regarding damages, and grant in part the motion to compel. We address each motion in turn.

## MOTION REGARDING DAMAGES

### Facts

On January 29, 1974, Oak received United States Patent No. 3,789,131 ("the Harney patent") for a device involved in descrambling subscription television transmissions. The original patent contained 12 claims. On June 13, 1986, Oak brought this action against Zenith, alleging infringement of claims 7, 8, 9, and 12 of the Harney patent. Statement As To Which Zenith Contends There Is No Genuine Issue ("Zenith's Statement") at ¶ 2; Plaintiff Oak Industries, Inc.'s Statement of Facts In Opposition to Zenith's Motion *In Limine* And For Partial Summary Judgment ("Oak's Statement") at 1. Almost one year later, on May 1, 1987, Zenith filed a request for reexamination of the Harney patent with the Patent and Trademark Office ("PTO") pursuant to 35 U.S.C. § 302. Zenith's Statement at ¶ 3. Oak's Statement at 1.

The PTO conducted a complete reexamination of the Harney patent. On October 27, 1987, the PTO examiner issued a First Office Action Report which called into question the validity of all twelve original claims contained in the Harney patent. The PTO noted that all the claims were "rejected" or "unpatentable" under one or more statutes, e.g., 35 U.S.C. § 102, 103, 112 and 305. The parties dispute the import of the First Office Action. Zenith

claims that the PTO "rejected" all twelve claims. Zenith's Statement at ¶ 4. Oak counters that the PTO broadly interpreted the Harney claims under a standard much different from that used in a patent infringement suit. Oak's Statement at 1–2. Therefore, according to Oak, the PTO's conclusion that the Harney patent (as broadly interpreted) is invalid should not bind this court, at least for the purposes of this infringement action. Oak's Statement at 2–3.

In any event, Oak participated in a formal interview with the PTO examiner on November 16, 1987. Zenith's Statement at ¶ 5; Oak's Statement at 1. At the interview, Oak proposed amending claims 7, 9, and 12, as well as adding a new claim 13. Zenith's Statement at ¶ 6; Oak's Statement at 1. The examiner agreed to Oak's proposal in part, and summarized the result of the interview as follows:

[I]t was agreed that proposed ... claims 7, 9, and 12 would be folded into one new claim 7. Claim 13 would be amended. Claims 1–6, 9, and 12 will be cancelled. The remaining claims would be allowable, including new claim 7 and 13, over the art of record and issues under 35 U.S.C. [§] 305 and 35 U.S.C. [§] 112.[1]

Sometime after the interview, Oak submitted amended claim 7 and new claim 13 to the PTO in accordance with the interview settlement. *Id.* The text of Oak's amended claim 7 is as follows (the bracketed passages apparently represent deletions while the underlined sections represent additions): [2]

Claim 7. (Amended) A method of coding and decoding television signals in a subscription television system including the steps of

a. *electronically transmitting over such subscription television system on a radio frequency carrier* [sending] an enabling *code* signal from a transmitting center to predetermined subscribers, *each enabling code signal including an enabling code portion*

---

1. The "proposed claims 7, 9, and 12" to which the examiner refers do not contain exactly the same language as original claims 7, 9, and 12.

2. Claim 13 is not contested in this lawsuit.

and an address code portion peculiar to a single subscriber location,

b. using the enabling *code* signal at each *predetermined* subscriber location to place signal decoding means in a *preauthorized* readiness condition *by storing the enabling code portion,*

c. coding the TV signal [sent] *transmitted* from the transmitting center and simultaneously therewith [sending] *electronically transmitting over such subscription television system on a radio frequency carrier* a decoding signal to each subscriber location, *the decoding signals including an enabling code portion and a decoding portion,*

d. using the decoding signals at the [enabled] subscriber locations *having decoding means which have been placed in a preauthorized readiness condition by comparing the first mentioned enabling code portion and the enabling code portion of the decoding signal, and using said comparison and the decoding portion of the decoding signal* to convert the coded TV signal into a useful TV signal.

Deposition of Michael Barclay at Exhibit 4 (emphasis in original).[3]

On November 19 and December 2, 1987, the examiner sent out notices of intent to issue a reexamination certificate for the Harney patent based upon the settlement reached at the interview. *Id.* at Exhibit 5. In the notice, the PTO states that it will amend claims 7, 8, 10, and 11; cancel claims 1–6, 9, and 12; and renumber new claim 13 as new claim 14.[4] The PTO is expected to issue the official reexamination certificate within the next several months. Zenith's Statement at ¶ 7; Oak's Statement at 1.

*Discussion*

Zenith argues that we should prevent Oak from introducing evidence of damages suffered prior to the issuance of the reexamination certificate or, in the alternative, for summary judgment that it is not liable for pre-reexamination damages. Regardless of the procedural posture of this motion, the issue we face is whether reexamination of the Harney patent precludes Oak from recovering all damages incurred from the issuance of the original patent in 1974 to the present.

The United States Court of Appeals for the Federal Circuit recently held that patent "claims contained in ... [a] reexamination certificate 'have the same effect as that specified in [35 U.S.C. § 252] for reissued patents on the right of any person who made, purchased, or used anything patented by such proposed amended or new claim,' ... prior to the issuance of a [reexamination] certificate." *Fortel Corp. v. Phone–Mate, Inc.,* 825 F.2d 1577, 1579 (Fed.Cir.1987) (quoting the reexamination statute, 35 U.S.C. § 307(a)). Therefore, as Zenith's alleged infringement took place prior to the issuance of the Harney reexam-

---

**3.** For comparison, original claims 7, 9, and 12 read as follows:

7. A method of coding and decoding television signals in a subscription television system including the steps of

a. sending an enabling signal from a transmitting center to predetermined subscribers,

b. using the enabling signal at each subscriber location to place signal decoding means in a readiness condition,

c. coding the TV signal sent from the transmitting center and simultaneously therewith sending a decoding signal to each subscriber location,

d. using the decoding signals at the enabled subscriber locations to convert the coded TV signal into a useful TV signal.

....

9. The method of claim 7 further characterized in that each enabling signal includes an enabling portion and an address peculiar to a single subscriber location.

....

12. The method of claim 7 further characterized in that the decoding signals include an enabling portion, with the further step of comparing the first mentioned enabling signal and the enabling portion of the decoding signal, and using said comparison to convert the coded TV signal into a useful TV signal.

Deposition of Michael Barclay at Exhibit 1.

**4.** Oak does not allege that Zenith infringed claims 10 or 11. Oak's Amended Responses to Defendant's Second Set of Requests for Admission at Nos. 102–105. From the record before us, it is unclear what amended claim 8 will describe. We assume that it is irrelevant to this motion because neither party has addressed it in its briefs.

ination certificate, we must look to 35 U.S.C. § 252 in order to determine the retroactive effect of the reexamined Harney patent:

> The surrender of the original patent shall take effect upon the issue of the reissued patent, and every reissued patent shall have the same effect and operation in law, on the trial of actions for causes thereafter arising, as if the same had been originally granted in such amended form, but in so far as the claims of the original and reissued patents are identical, such surrender shall not affect any action then pending nor abate any cause of action then existing, and the reissued patent, to the extent that its claims are identical with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent.

35 U.S.C. § 252.[5]

Applying § 252 to reexamined patent claims, the governing language is that *"in so far as* the claims of the original and . . . [reexamined] patents are *identical,* such . . . [reexamination] shall not affect any action then pending."* 35 U.S.C. § 252. Moreover, *"to the extent* that [the reexamined patent's] claims are *identical* with the original patent, [the reexamined patent] shall constitute a continuation thereof and have effect continuously from the date of the original patent."* *Id.* Therefore, in this infringement action, Oak may recover for pre-reexamination damages only to the extent the reexamined Harney claims are "identical" to the original claims.

The term "identical" does not mean "exactly the same." *See Slimfold Manufacturing v. Kinkead Industries,* 810 F.2d 1113, 1115 (Fed.Cir.1987). The Federal Circuit has held that " 'identical' means at most 'without substantive change.' " *Seattle Box v. Industrial Crating and Packing,* 731 F.2d 818, 828 (Fed.Cir.1984); *see also Kaufman Co., Inc. v. Lantech, Inc.,* 807 F.2d 970, 977 (Fed.Cir.1986). In determining what the phrase "without substan-

tive change" means, the Federal Circuit has focused upon the particular facts of each case. For example, it has held that the phrase "greater than" is not "identical" to the phrase "substantially equal to or greater than." *Seattle Box,* 731 F.2d at 828. Also, it has found that even "slightly broader" amended claims are not "identical" to original claims. *Fortel,* 825 F.2d at 1580. On the other hand, the court has regarded as "identical" claims which "merely clarify," *Kaufman,* 807 F.2d at 977, or which "correct[ ] a drafting error that the examiner and the [owner's] patent lawyer could and probably should have spotted." *Slimfold Manufacturing,* 810 F.2d at 1117.

Though these Federal Circuit decisions seem to call for a narrow reading of the term "identical," we note that the parties have directed us to no decision expressly discussing the application of § 252 to a "narrowed" claim. Moreover, we recognize that "a § 252 determination is an equitable one. . . . Thus, a court's primary concern should be with whether the scope of the claims has been broadened by the amendment." *Tennant Company v. Hako Minuteman, Inc.,* 4 U.S.P.Q.2d (BNA) 1167, 1169 [available on WESTLAW, 1987 WL 12207] (N.D.Ill.1987).

■ On the other hand, we believe that substantial concerns militate against treating all "narrowed" claims as "identical." First, the statute authorizing patent reexaminations does not permit claim amendments which "enlarg[e] the scope of a claim." 35 U.S.C. § 305. Therefore, all reexamined claim amendments must necessarily narrow or leave unchanged the scope of original patent claims. If all narrowed claim amendments are "identical," then all reexamined claim amendments would be "identical" to the original claims and a patent owner could always recover damages for infringement of a reexamined claim amendment from the date of the original patent's issuance.

5. The parties cited cases discussing the irrelevant second paragraph of § 252. This second paragraph, which codifies the so-called "doctrine of intervening rights," applies only to post-reexamination damages. *Fortel Corp. v. Phone–Mate,* 825 F.2d 1577, 1580 (Fed.Cir.1987). On this motion, Zenith disputes only Oak's right to recover pre-reexamination damages.

This cannot be the proper result. Section 307 directs us to apply the rules of § 252 to determine whether a patent owner may recover for infringement of reexamined claims from the date of the original patent's issuance. Section 252 details the rules pertaining to the retroactivity of reissued patent claims. Section 252 clearly distinguishes between "identical" and non-"identical" reissued patent claims; it allows only the owners of "identical" reissued patent claims to recover damages for infringement from the date of the issuance of the original patent. Because § 307 references § 252, we must infer that Congress intended to make the same distinction with respect to reexamined claims. Thus, under § 307, only owners of "identical" reexamined patent claims can recover infringement damages from the date of the original patent's issuance. Owners of non-"identical" patent claim amendments cannot recover. However, this distinction in § 307 would become meaningless if we were to adopt the rule that all narrowed claims, and thus all reexamined claims, are "identical." Because this distinction between "identical" and non-"identical" claim amendments is the critical element of § 307 analysis, we cannot disregard it. As a matter of statutory construction, we must give meaning to § 307 and therefore cannot adopt the rule that all narrowed claims are "identical."

Second, policy considerations argue against granting retroactive effect to *all* reexamined claim amendments. Denying retroactive effect to substantially narrowed reexamined claim amendments discourages patent applicants from making overly broad claims on their original applications and counting on the reexamination process to later identify their narrow valid claims. Nevertheless, we believe that equitable considerations call for a more liberal interpretation of the word "identical" in the context of slightly narrowed claims than in the case of broadened claims.

To summarize, Oak can recover for pre-examination infringement damages only to the extent that its original and reexamined Harney claims are "identical" within the meaning of § 252, as referenced by § 307. Here, amended claim 7 contains very different language from original claims 7, 9, and 12. However, our focus should be on the substantive differences between the amended and original claims, not on differences in claim wording. Without the benefit of testimony and evidence regarding the technology involved in the Harney patent, we are not now in a good position to decide the "identical" claim issue. Therefore, after the jury has returned its verdict, which might include answers to special interrogatories going to the "identical" claim issue, we will decide the question in light of the legal principles discussed above.[6] In order to avoid any confusion, we will ask the jury to calculate damages suffered before and after reexamination, should Zenith be found liable for infringement.

In summary, if Oak shows that Zenith infringed amended claim 7 of the Harney patent,[7] then Oak can recover damages suffered prior to the reexamination, *only if* amended claim 7 is "identical" to original

6. We do not rule out the possibility that the state of the evidence might make it appropriate for the court to decide the issue as a matter of law at some point before the case goes to the jury. We further note that the "identical" claim issue, like all issues of claim construction, is a question of law. *Martin v. Barber*, 755 F.2d 1564, 1567 (Fed.Cir.1985). Therefore, any special interrogatory responses would be purely advisory.

7. Oak claims that it should be able to recover damages for infringement of its original Harney claims, if they are found valid by the jury. Oak argues that, because the PTO employed a broader claim interpretation standard during reexamination than would be used in this infringement action, we should not consider the PTO's find-

ings to be binding. If Oak was dissatisfied with these findings, it could have appealed. 35 U.S. C. § 306. Second, if Oak's argument were adopted, the statutory provision addressing the retroactive effect of reexamination amendments, 35 U.S.C. § 307, would have no meaning. An owner could always enforce his or her original claims. Even if the words of § 307(b) do not expressly bar Oak from recovering for its original claims, such recovery would be clearly contrary to Congress's intent. If an owner could always recover for infringement of its original claims, there would have been no reason for Congress to enact a statutory provision concerning the retroactive effect of reexamination amendments.

claims 7, 9, and 12. At trial, we will consider the facts in light of the legal principles outlined in this opinion, and decide whether amended claim 7 is identical to original claims 7, 9, and 12 within the meaning of 35 U.S.C. § 252.

## MOTION TO COMPEL TESTIMONY

### Facts

On February 2, 1988, Zenith deposed Daniel McEachran ("McEachran"), an attorney for Oak Industries ("Oak"). In the early 1970s, McEachran had worked on the original application for the Harney patent. Deposition of McEachran ("Dep.") at 8. In addition, he had represented Oak during the Patent Office's 1987 reexamination of the patent. Dep. at 50–51. During the reexamination process, he apparently drafted the proposed amended patent claims which Oak submitted to the Patent Office. *Id.* at 54.

At McEachran's deposition, Zenith asked him several questions in connection with the preparation of the patent's application and reexamination documents. Zenith focused on why McEachran had drafted parts of different documents as he had. *Id.* at 15–54. Oak's attorney objected, citing the attorney work product privilege. *Id.* at 15, 17, 20–21, 49–54. On February 24, 1988, Zenith moved to compel McEachran to testify regarding these matters.

### Discussion

Rule 26(b)(3) of the Federal Rules of Civil Procedure codifies the attorney work product privilege:

[A] party may obtain discovery of documents and tangible things otherwise discoverable under … this rule and *prepared in anticipation of litigation or for trial* by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by any other means. In ordering discovery of such materials when the re-

quired showing has been made, *the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.*

Rule 26(b)(3) (emphasis added). On its face, this rule applies only to documents and tangible things. However, the principles of *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), the seminal work product case, restrict an opposing party's inquiry into an attorney's mental processes, regardless of the discovery method employed. *See Shelton v. American Motors Corp.,* 805 F.2d 1323 (8th Cir. 1986). Therefore, absent special circumstances, we should not allow Zenith to depose McEachran concerning his mental impressions, conclusions, and legal theories, which were formulated "in anticipation of" trial or litigation.

■ Here, Zenith seeks discovery of McEachran's thought processes with respect to the original patent application and the later reexamination. As far as the application, we believe that any impressions or thoughts he had regarding the drafting or handling of the original application are too distant in time to be characterized as having been made "in anticipation" of litigation. *See Electronic Memories and Magnetics Corp. v. Control Data Corp.,* 20 F.R.Serv.2d (Callaghan) 700 (N.D.Ill.1975); *Hercules, Inc. v. Exxon Corp.,* 434 F.Supp. 136 (D.Del.1977). Moreover, there is no evidence suggesting that this patent application was particularly likely to result in litigation. We decline to hold, as a general rule, that an attorney's thoughts and theories regarding the preparation of a patent application are always protected by the work product privilege. Therefore, we hold that Zenith may inquire into the mental impressions and legal theories McEachran had formulated in connection with the patent application.

McEachran's thoughts and theories regarding the Harney reexamination present a far different situation. When the PTO reexamined the patent at Zenith's request, this litigation had already begun. More-

over, the reexamination involved the same central issue raised by this litigation, i.e., the validity of the Harney patent. Consequently, whatever McEachran considered while representing Oak in the reexamination would certainly reflect Oak's legal strategies and positions in this case. *See Hercules v. Exxon Corp.*, 434 F.Supp. 136, 153 (D.Del.1977) ("documents prepared for one case have the same protection in second case where the two cases are closely related in parties or subject matter").[8] For example, McEachran's rationale for drafting the reexamination claim amendments in the way he did could reveal Oak's patentability theories in this case. *See Natta v. Zletz,* 418 F.2d 633 (7th Cir.1969) (documents related to drafting of motions in patent infringement case are subject to work product privilege). We hold that Zenith may not question McEachran about his thoughts and legal theories while representing Oak at the reexamination.

We recognize that work product privilege is qualified. However, Zenith has shown no "substantial need" (aside from relevance) for obtaining this strategic information. In any event, Oak's powerful interest in keeping this information confidential outweighs Zenith's interest in obtaining it.[9]

In summary, we hold that Zenith may depose McEachran regarding his thoughts, impressions, and legal theories in connection with the original application, but may not do so in connection with the reexamination proceedings.[10]

CONCLUSION

We grant in part the defendant's motion to compel the testimony of Daniel McEa-

chran. We deny the defendant's motion regarding damages. We reserve for trial the issue of the period for which Oak may recover damages if the jury returns a verdict of infringement.

---

**8.** Zenith emphasizes that a reexamination is an *ex parte* proceeding. While this is technically true, we note that Zenith initiated the reexamination process. More importantly, the reexamination focused upon many of the same issues raised in this case. The purpose of the work product privilege is to protect from discovery the attorney's legal theories and conclusions pertaining to the issues involved in this case. We should not focus upon a technical distinction to defeat this purpose.

**9.** Our holding does not severely limit Zenith's access to information regarding the reexamination. Zenith can obtain all documents which Oak submitted to the Patent Office or released

to any other third party, as well as any technical, non-legal information McEachran received from Oak. *See Loctite Corporation v. Fel–Pro, Inc.,* 667 F.2d 577, 582 (7th Cir.1982).

**10.** As a final point, we note that the parties' briefs somewhat interchangeably cite attorney-privilege decisions and work product privilege cases. These are different privileges. Nothing in this opinion is intended to permit discovery of matters properly subject to the privilege against disclosure of attorney-client communications. Here, we address only the discovery limitations imposed by the work product privilege.