**In re ATLANTIC FINANCIAL
MANAGEMENT SECURITIES
LITIGATION.**

**MARGARET HALL FOUNDATION,
INC., et al., Plaintiffs,**

v.

**Maurice STRONG, et al., Defendants.**

Civ. A. No. 84–405–S.
MDL No. 584.

United States District Court,
D. Massachusetts.

June 21, 1988.

Lawrence G. Cetrulo, Burns & Levinson, Boston, Mass., for plaintiffs.

John A.D. Gilmore, Hill & Barlow, Boston, Mass., for defendants.

MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION TO COMPEL DEPOSITION TESTIMONY AND IDENTIFICATION AND PRODUCTION OF MATERIALS REVIEWED BY DEFENDANTS IN PREPARATION FOR THEIR DEPOSITIONS

SKINNER, District Judge.

The parties in this securities fraud action are in the midst of a consolidated discovery process. Presently before the court is a motion by plaintiffs to compel deposition testimony and the identification and production of certain documents. Plaintiffs' motion encompasses three separate issues. First, plaintiffs ask that I compel defendant Strong to testify as to what documents he reviewed in preparation for his deposition. Plaintiffs also seek production of those documents. Second, plaintiffs seek the production of an unsigned affidavit, prepared in 1982 for defendant Melsheimer by AZL counsel. Finally, plaintiffs seek to depose defendants Melsheimer and Spangler about communications they had with AZL's in-house and outside counsel in 1981 and 1982 concerning AZL merger activity and sale of AZL stock. Defendants raise the attorney-client and attorney work product privileges to support their denials of plaintiffs' requests.

1. *Material Used by Strong in Preparation for His Deposition*

During the course of the deposition of defendant Strong, plaintiffs' counsel asked whether defendant Strong had reviewed any deposition transcripts of testimony given in this case. Strong indicated that he had reviewed some extracts of Mr. DiIanni's deposition. He also said that he had reviewed a compilation of documents and deposition testimony, as well as summaries of testimony, all prepared by counsel. Defense counsel asserted at the deposition that his client would not testify about the preparatory materials because the information was protected by the attorney-client privilege.

Defendant Strong now argues that plaintiffs are not entitled to the material requested because it is attorney work prod-

uct, protected under Federal Rule of Civil Procedure 26(b)(3) and the principles enunciated in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Plaintiffs contend that the material must be disclosed, under Federal Rule of Evidence 612. The rule provides:

> [I]f a witness uses a writing to refresh memory for the purpose of testifying, ... (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness.

It is applicable to depositions and deposition testimony by operation of Fed.R.Civ.P. 30(c) (examination and cross-examination of deposition witnesses may proceed as permitted at the trial under the provisions of the Federal Rules of Evidence).

Defendant Strong indicated in deposition that he had reviewed the material at issue to refresh his recollection for the purpose of testifying.[1] This is a sufficient showing under Rule 612. The only question that remains is whether disclosure is necessary in the "interests of justice."

The question of whether disclosure is necessary must be resolved with a recognition of the competing policy concerns underlying Fed.R.Evid. 612 and Fed.R.Civ.P. 26(b)(3). On the one hand, plaintiffs need to know the information reviewed by Strong in order to conduct an effective examination; testimony is often colored by knowledge of what others have said on a given subject. On the other hand, defendant Strong has a legitimate interest in protecting any information that might reveal his counsel's trial strategy or theories of the case. In order to decide whether the material must be disclosed, I must balance these competing considerations. 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 612[04] (1987). *See also In re Comair Air Disaster Litigation*, 100 F.R.D. 350,

353 (E.D.Ky.1983) (court must balance competing policy concerns); *James Julian, Inc. v. Raytheon*, 93 F.R.D. 138, 146 (D.Del. 1982) (same).

■ The protection of attorney work product material is designed, above all, to protect the mental impressions and thought processes of attorneys. *See Hickman v. Taylor*, 329 U.S. 495, 511–12, 67 S.Ct. 385, 393–94, 91 L.Ed. 451 (1947) (emphasizing the importance of the policy against invading the privacy of an attorney's course of preparation); Fed.R.Civ.P. 26(b)(3) (calling for protection against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney). An attorney's summaries of testimony certainly reveal his or her mental impressions or opinions about the case. This type of material deserves the most stringent protection. *See Upjohn Co. v. United States*, 449 U.S. 383, 400–01, 101 S.Ct. 677, 688, 66 L.Ed.2d 584 (1981) (declining to decide whether work product revealing an attorney's mental processes is entitled to absolute, or merely "special," protection).

■ Deposition testimony and documents already discovered in a case fall into a different category. An attorney's choice of material does, to some extent, reveal his or her view of what is important in the case. *See James Julian, Inc. v. Raytheon*, 93 F.R.D. at 144; *Berkey Photo, Inc. v. Eastman Kodak Co.*, 74 F.R.D. 613, 616 (S.D.N.Y.1977). Plaintiffs in this case, however, are not seeking a litigation "binder" or trial notebook. They seek identification, and perhaps production, of deposition transcripts and documents that the witness reviewed. Defendant need not even reveal the order in which the documents were presented to him. The minimal exposure of the attorney's mental process that would occur in this case if defendant Strong revealed the deposition transcripts and documents that he used to refresh his recollection does not justify withholding information which is essential to plaintiffs' effective examination of the witness.

---

**1.** On the third day of his deposition, defendant Strong mentioned a variety of material in response to the question of what he had done to refresh his recollection before testifying.

Defendant Strong must identify and produce the deposition transcripts and already-discovered documents he reviewed prior to testifying. Summaries of testimony and other documents prepared by counsel are privileged and need not be disclosed.

### 2. The Unsigned Affidavit Drafted for Defendant Melsheimer

Defendant Melsheimer was deposed by plaintiffs in March 1988. During the course of the deposition, Melsheimer indicated that in preparation for his testimony, he had reviewed an unsigned affidavit which had been prepared for him by counsel in 1982 or 1983 and submitted to Mr. Carabina of the Securities Division of the Secretary of the Commonwealth of Massachusetts. Plaintiffs seek production of this unsigned affidavit.

In 1982 or 1983, Mr. Carabina, of the Massachusetts Securities Division, was conducting an investigation of Atlantic Financial Management and its principals, with regard to AZL stock purchased for Atlantic Financial Management's clients' accounts. Carabina requested that Melsheimer voluntarily prepare an affidavit, focusing on his memory of contacts with defendant DiIanni. Carabina indicated that the affidavit need not be signed. An affidavit was prepared for Mr. Melsheimer by AZL's outside counsel. It was forwarded, unsigned, to Carabina.

Defendants claim that they need not produce the affidavit because it is protected by the work product doctrine under Fed.R.Civ. P. 26(b)(3). Plaintiffs argue that the affidavit is not entitled to work product protection. They argue, in the alternative, that even if the affidavit was entitled to work product protection at some point, the protection was subsequently waived. They further contend that even if the protection was not waived, plaintiffs have shown substantial need and an inability to obtain the information by other means, as required by Fed.R.Civ.P. 26(b)(3). Finally, plaintiffs ar-

gue that they are entitled to the document under Fed.R.Evid. 612.

Under the work product doctrine codified in Fed.R.Civ.P. 26(b)(3), certain protections are afforded to (1) documents or other tangible things, which (2) are prepared in anticipation of litigation or for trial, (3) by or for another party or by or for that other party's representative. The Melsheimer affidavit is a document which was prepared by a party's representative. In order to gain protection, however, it must have been prepared "in anticipation of litigation."

■ The Melsheimer affidavit was prepared at the request of the office of the Securities Division of the Secretary of the Commonwealth of Massachusetts, approximately 18 months before the initiation of any litigation in this case. A document can receive work product protection, even if it was prepared before litigation was initiated. When a party is involved in an event that could potentially lead to litigation, however, all documents subsequently prepared with regard to that event are not necessarily immune from discovery. *Scott Paper Co. v. Ceilcote Co., Inc.*, 103 F.R.D. 591, 595 (D.Me.1984). The essential question is what was the "primary motivating purpose behind the creation of the document." *United States v. Gulf Oil Corp.*, 760 F.2d 292, 295 (Temp.Emer.Ct.App. 1985).

■ The evidence before me does not support a finding that the primary motivating purpose underlying the preparation of the Melsheimer affidavit was to aid in possible future litigation. The document was prepared to assist the Securities Division of the Secretary of the Commonwealth of Massachusetts in its investigation. Even if defendant Melsheimer and his counsel thought at the time they submitted the affidavit that future litigation was a possibility, it is highly unlikely that this document was prepared for the purposes of that potential litigation.[2]

---

2. Not having had the opportunity to view the document *in camera,* I am to some extent limited in my ability to determine the precise purpose for which the document was prepared.

Because I find that any privilege that may have existed was waived, however, there is no need for me to view the document.

 Furthermore, even had the requirements of the work product doctrine been fulfilled, defendant Melsheimer waived that protection by submitting the affidavit to the Securities Division of the Secretary of the Commonwealth of Massachusetts. Three factors should be considered in determining whether there has been a waiver of the work product privilege: (1) whether the party claiming the privilege seeks to use it in a way that is inconsistent with the purpose of the privilege; (2) whether the party claiming the privilege had a reasonable basis for believing that the disclosed materials would be kept confidential, and (3) whether waiver of the privilege in these circumstances would trench on any policy elements inherent in the privilege. *In re Subpoenae Duces Tecum*, 738 F.2d 1367, 1372 (D.C.Cir.1984). Under limited circumstances, disclosure can be consistent with the policies underlying the work product privilege:

> [T]he work product privilege does not exist to protect a confidential relationship, but rather to promote the adversary system by safeguarding the fruits of an attorney's trial preparation from the discovery attempt of an opponent.... A disclosure made in the pursuit of such trial preparation, and not inconsistent with maintaining secrecy against opponents, should be allowed without waiver of the privilege.

*United States v. American Telephone and Telegraph*, 642 F.2d 1285, 1299 (D.C.Cir. 1980) (original emphasis removed).

The disclosure in this case was not consistent with the purpose of the work product doctrine. Defendant did not pass information to a potential ally in litigation; he disclosed the affidavit to a potential adversary. As the Court of Appeals of the District of Columbia said, in a case involving voluntary disclosures to the Securities Exchange Commission,

> [f]airness and consistency require that appellants not be allowed to gain the substantial advantages accruing to voluntary disclosure of work product to one adversary—the SEC—while being able to maintain another advantage inherent in

protecting that same work product from other adversaries.

*In re Subpoenae Duces Tecum*, 738 F.2d at 1372.

Furthermore, defendant Melsheimer did not have any legitimate expectation of confidentiality when he submitted his affidavit to the Securities Division. In support of defendants' opposition to this motion, defendant Melsheimer and attorney Cohen have signed affidavits in which they state that they either "understood," or were "under the impression" that the affidavit submitted to the Securities Division would be kept confidential. There is no evidence, however, of a written, or even oral, assurance of confidentiality by the Securities Division. Under these circumstances, defendant had no legitimate or reasonable expectation of confidentiality.

Finally, the policies underlying the work product doctrine do not dictate that the Melsheimer affidavit be protected. By submitting the affidavit to the Securities Division of the Secretary of the Commonwealth of Massachusetts, defendant Melsheimer waived any attorney work product protection that may have existed. Plaintiffs' motion for production of that document will be allowed.

3. *Communications Between Former AZL Officers and their Counsel*

Plaintiffs seek to depose defendants Spangler and Melsheimer about conversations that took place in 1981 and 1982 with AZL in-house and outside counsel. More specifically, plaintiffs are interested in conversations with counsel regarding restrictions on insider trading, the issuance of a proposed press release in November 1981, and negotiations and discussions between AZL management and defendant DiIanni. Defendants contend that all communications with counsel are protected by the attorney-client privilege.

 The attorney-client privilege applies when four conditions have been met: (1) the asserted holder of the privilege is, was, or sought to be a client; (2) the communication was made with a lawyer, or his or her subordinate; (3) the communication relates

**146**

to facts of which the attorney was informed for the purpose of securing a legal opinion, legal services or assistance in a legal proceeding; and (4) the privilege has not been waived. *United States v. Wilson*, 798 F.2d 509 (1st Cir.1986) (citing *United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358–59 (D.Mass.1950)). These conditions have all been met with respect to the communications that plaintiffs seek to have revealed. Plaintiffs argue, however, that the holding in *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970), *cert. denied*, 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971) mandates overriding the attorney-client privilege in this case.

In *Garner v. Wolfinbarger, supra,* the Fifth Circuit addressed the question of whether a corporation or its managers can assert the attorney-client privilege against the corporation's shareholders. In deciding that the privilege should not be automatically applied, the court noted that management does not manage for itself, but rather operates for the benefit of the corporation's shareholders. *Garner*, 430 F.2d at 1101. The Court concluded that when management seeks to invoke the attorney-client privilege against shareholders, the shareholders should be given the opportunity to show cause why the privilege should not apply. *Garner*, 430 F.2d at 1102–03.

■ The *Garner* opinion rested upon a finding that a fiduciary relationship existed between the managers and the shareholders in that case. Indeed the holding in *Garner* has been extended to other situations in which fiduciary relationships exist. *See, e.g., Quintel Corp. v. Citibank*, 567 F.Supp. 1357 (S.D.N.Y.1983) (fiduciary relationship between bank and client in real estate transaction); *Washington–Baltimore Newspaper Guild v. Washington Star Co.*, 543 F.Supp. 906 (D.D.C.1982) (fiduciary relationship between pension fund trustee and beneficiaries). The key element is the mutuality of interests between a fiduciary and the beneficiary. Therefore, in order for the *Garner* rationale to apply, the mutuality of interest must exist at the time the communications to counsel are

made. *Quintel Corp., N.V. v. Citibank, N.A.*, 567 F.Supp. 1357, 1363–64 (S.D.N.Y. 1983) (privilege attaches only to communications made during the course of the fiduciary relationship); *Shirvani v. Capital Investing Corp.*, 112 F.R.D. 389 (D.Conn. 1986) (*Garner* rationale should be clearly confined to an existing relationship). *But see Cohen v. Uniroyal*, 80 F.R.D. 480, 484 (E.D.Pa.1978) (applying *Garner* although the fiduciary relationship was not yet in existence at the time of the communication).

■ Plaintiffs in this case have not made a sufficient showing that a fiduciary relationship existed between plaintiffs and defendants Spangler and Melsheimer at the time the discussions with counsel took place. Indeed, some of the issues discussed with counsel relate to matters that, according to plaintiffs' allegations, induced the purchase of AZL stock. If the stock had not yet been purchased, a fiduciary relationship did not yet exist.

Without a showing of a fiduciary relationship, the *Garner* rationale does not apply. Therefore, the communications with AZL's counsel are privileged, and plaintiffs' motion will be denied.

*Conclusion*

Plaintiffs' motion to compel the identification and production of documents reviewed by defendant Strong to refresh his recollection is ALLOWED to the extent that defendant Strong must identify and produce deposition transcripts and already-discovered documents which he reviewed in preparing for his deposition. Plaintiffs' motion to compel production of the unsigned affidavit reviewed by defendant Melsheimer is ALLOWED. Plaintiffs' motion to compel testimony about defendants' communications with AZL's attorneys is DENIED.