In the Matter of the Application of **MINEBEA CO., LTD., Nippon Miniature Bearing Corporation, and NMB Technologies (USA) Inc.,**

For an Order compelling Attorneys Thomas D. MacBlain, Arthur Tenser, and Peter J. Phillips

To Testify in the Action of COMAIR ROTRON, INC., Plaintiff,

v.

MINEBEA CO., LTD., Nippon Miniature Bearing Corporation, and NMB Technologies (USA) Inc., Defendants.

Now pending in the United States District Court for the District of New Hampshire, Civil Action No. C–91–19–D.

No. M8–85 (RWS).

United States District Court, S.D. New York.

June 23, 1992.

Brumbaugh, Graves, Donohue & Raymond, New York City (Thomas D. MacBlain, of counsel), for plaintiff.

Amster, Rothstein & Ebenstein, New York City (Morton Amster, Joel E. Lutzker, Anthony F. LoCicero, James Tramontana, of counsel), for defendant.

## OPINION

SWEET, District Judge.

Defendant Minebea Co., Ltd., Nippon Miniature Bearing Corporation and NMB Technologies (USA), Inc. (collectively, "Minebea") has moved pursuant to Fed. R.Civ.P. 37(a)(4) for an order compelling the further oral examination of non-party witnesses attorneys Thomas MacBlain ("MacBlain"), Arthur Tenser ("Tenser") and Peter J. Phillips ("Phillips") (collectively, the "Deponents") and compelling the production of documents and things responsive to the subpoenas previously served on them. Plaintiff Comair Rotron, Inc. ("Rotron") has moved to dismiss the motion to compel. For the following reasons, the motion is granted in part and denied in part. A list of those questions to which the Deponents are hereby compelled to answer and those as to which Rotron's objections are sustained is provided in the Appendix to this opinion.

### Prior Proceedings

The underlying patent infringement action (the "Action") giving rise to these motions was commenced on January 18, 1991, and is presently pending in the United States District Court for the District of New Hampshire. Similar motions concerning the depositions of attorneys retained by Rotron to prosecute the patents-in-issue are pending in the United States District Courts for the Districts of New Hampshire and Massachusetts.

In the Action, Rotron alleges that Minebea infringed its U.S. Patent Nos. 4,494,028 (the " '028 Patent") and 4,779,069 (the " '069 Patent") (together, the "Patents"). Minebea denies the allegations of infringement and also asserts as affirmative defenses that the Patents were not "duly and legally issued," that the Patents are invalid, and that the '069 Patent is unenforceable because it was procured through inequitable conduct. Minebea claims that several prior art patents and publications anticipate and hence invalidate one or more claims of the Patents. Further, it is Minebea's position that during the prosecution of the applications giving rise to the Patents, Rotron knowingly withheld material prior art patents and publications with the intent of deceiving the Patent Examiner.

Minebea originally filed its motion in the Miscellaneous Part of this court on January 10, 1992, with a scheduled return date of January 28, 1992. On January 22, 1992, the parties stipulated to an adjournment of Minebea's motion to March 10, 1992. Rotron filed its motion on February 13, 1992, with a scheduled return date of March 3, 1992. On March 2, 1992, the parties stipulated to the adjournment of Rotron's motion to March 10, 1992. Oral argument was heard by this court, sitting in Part I, on March 10, 1992 and the motions were considered fully submitted as of March 13, 1992.

### The Facts

#### The Motion

The Deponents are three of the attorneys who were responsible for preparing, filing

and prosecuting the applications which ultimately issued as the patents-in-suit. Minebea's motion to compel relates to certain questions and document requests to which Rotron objected on the grounds of the attorney-client privilege and the work-product doctrine at the Deponents' depositions, which were held on July 29, 1991, July 30, 1991 and August 2, 1991, respectively. Minebea contends that none of the information sought relates to attorneys' work in anticipation of litigation or to privileged attorney-client communications.

Background

As members of the New York City law firm of Brumbaugh, Graves, Donohue & Raymond (the "Brumbaugh Firm"), Messrs. MacBlain, Tenser and Phillips were responsible for the preparation and prosecution of the applications that ultimately issued as the '028 and '069 Patents.

## The '028 Patent

The '028 Patent, entitled "Integral Coaxial Commutation and Rotor Magnets and Apparatus and Method for Making Same," was issued on January 15, 1985 from Application Serial No. 428,828 (the " '828 Application") which was filed by the Brumbaugh Firm on behalf of Rotron on September 30, 1982. As filed, the '828 Application related to both a one-piece unitary rotor magnet for a D.C. brushless motor and a method for making the magnet. On February 10, 1983, Rotron, by the Brumbaugh Firm, filed an Information Disclosure Statement (the "February 10 Disclosure Statement") citing material prior art of which Rotron was aware. Minebea claims that the February 10 Disclosure Statement failed to list certain material prior art patents.

On July 21, 1983, the PTO required Rotron to restrict the '828 Application to the claims pertaining either to the rotor magnet or those pertaining to the method for making the magnet (the "July 21, 1983 Office Action"). See Minebea Reply Memo. Tab 1. Rotron cancelled all claims relating to the method of making the rotor magnet from the '828 Application and prosecuted these claims as part of Application Serial No. 662,390 (the " '390 Application"). As

of the separation of the applications for the two inventions, the '828 Application, which ultimately issued as the '028 Patent, pertained only to the magnet itself. The series of applications beginning with the '390 Application ultimately issued as the '069 Patent.

In response to the PTO's rejection of certain claims on the grounds of obviousness, on October 24, 1983 Rotron amended one of the claims and cited an additional prior art patent. On January 13, 1984, the Patent Examiner maintained his rejection of claims 1–13 and cited two additional prior art patents.

In February 1984, while the '828 Application was pending, and before the '390 series of applications had been filed, Rotron learned that Matsushita Electric Corporation of America and Matsushita Electric Industrial Co., Ltd. (together, "Matsushita") was being accused of infringement by Papst Mechtronic Corporation ("Papst"), the owner of a patent regarding a brushless D.C. motor (the "Papst Action"). On February 21, 1984, pursuant to a request by Rotron, MacBlain investigated the International Trademark Commission ("ITC") file in the Papst complaint against Matsushita and learned that Matsushita agreed to change to a construction that would infringe the claims pending in the '828 Application. See MacBlain Dec. at 2–3.

On July 12, 1984, Rotron filed an amendment to the '828 Application (the "July 1984 Amendment"), in which it discussed the invention, several of the references that were already of record and four additional references, including the "Muller '104 Patent," and the "Doemen '005 Patent," as described in Minebea's moving papers. However, according to Minebea, these prior art patents were never cited to the PTO and thus were never considered by the Patent Examiner.

On September 3, 1985, Rotron filed an action in district court against Matsushita (the "Matsushita District Court Action"), and on September 4, 1985 initiated an action against Matsushita before the ITC (the "Matsushita ITC Action"). Both of these

actions alleged infringement of the '028 Patent.

### The '069 Patent

The '069 Patent, entitled "Apparatus and Method for Making Integral Coaxial Communication and Rotor Magnets" issued on October 18, 1988 from Application Serial No. 85,301 (the " '301 Application"), which attorneys at the law firm of Bromberg & Sunstein (the "Bromberg Firm") filed on behalf of Rotron on August 7, 1987. The '069 Patent relates to a method for making the rotor magnet covered by the '028 Patent.

The '301 Application was the last in a series of applications including the '668 Application and the '390 Application, both of which were filed by attorneys at the Brumbaugh Firm. The prosecution of the '668 Application had been held in abeyance after the Brumbaugh Firm called the Patent Examiner's attention the Matsushita ITC and District Court Actions. The PTO was alerted that certain prior art cited in these actions would be brought to its attention as a later time.

At some point in 1986, Rotron retained the Bromberg Firm in substitution for the Brumbaugh Firm to represent it in the Matsushita ITC and District Court Actions and before the PTO in prosecuting the '069 Patent. In December 1986 Bruce Sunstein ("Sunstein") of the Bromberg Firm appeared before the Federal Circuit on Rotron's behalf in the appeal of the Matsushita ITC Action. On May 14, 1987, Rotron filed a power of attorney appointing the Bromberg Firm to prosecute the '069 Patent in the PTO.

On July 28, 1987, Rotron, by the Bromberg Firm, filed an Information Disclosure Statement and amendment (the "July 1987 IDS," "the July 1987 Amendment" and "the Appendix on Appeal") with respect to the '668 Application which allegedly cited the most relevant, previously undisclosed prior art uncovered during the Matsushita ITC Action. Minebea claims that these

documents were of no assistance to the Patent Examiner, given their volume and confusing manner of presentation.

On February 28, 1988, the Federal Circuit reversed the determination of the ITC finding that the '028 Patent was valid and infringed by Matsushita. The Matsushita District Court Action, which had been stayed pending resolution of the Matsushita ITC Action, was reactivated in December 1988, with the Bromberg Firm substituting for the Brumbaugh Firm. Rotron prevailed on its cross-motion for summary judgment, and the '028 Patent was found valid and infringed.

### Discussion

1. Rotron's Motion to Dismiss Minebea's Application

Rotron has moved to dismiss Minebea's application for an order compelling the requested discovery on the grounds that the issues presented in the application are properly decided by the Honorable Shane Devine of the District of New Hampshire, before whom the Action and a motion for a protective order on behalf of Rotron, MacBlain, Tenser and Phillips is pending. As counsel for the parties were informed at oral argument, after consulting with chambers of both Judge Devine and Magistrate Judge William H. Barry on March 10, 1992, it has been determined that the New Hampshire court will defer to the order entered by this court on the present motion. Therefore, Rotron's motion to dismiss Minebea's application is denied.

2. Attorney Work Product Objections [1]

◼ The work product doctrine is an exception to the general rule that discovery is available "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed. R.Civ.P. 26(b)(1). Under the seminal case of *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and Federal Rule of Civil Procedure 26(b)(3), documents and tangible things prepared "in anticipa-

---

**1.** It is not disputed on this motion that the information sought by Minebea, namely, information relating to the knowledge of or knowl-
edge chargeable to Rotron and its intent to deceive the PTO, is relevant and material to Minebea's defenses and affirmative defenses.

tion of litigation" and the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation" are afforded protection from discovery. *See also Oak Indus. v. Zenith Elecs. Corp.,* 687 F.Supp. 369, 374 (N.D.Ill.1988) (though Rule 26(b)(3) provides protection for documents and tangible things only, principles of *Hickman* restrict inquiry into attorney's mental processes, etc. regardless of discovery method employed). The party invoking the doctrine's protections bears the burden of establishing that the information sought to be discovered constitutes attorney work product. *Winter Panel Corp. v. Reichhold Chems., Inc.,* 124 F.R.D. 511, 513 (D.Mass.1989).

"Ordinary" work product, that is, work product not implicating the mental impressions, conclusions, opinions or legal theories of an attorney, is not discoverable unless the party seeking discovery of such documents and tangible things demonstrates a "substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed.R.Civ.P. 26(b)(3). Although some courts apply an absolute protection to "opinion" work product, *see, e.g., Bulk Lift Int'l, Inc. v. Flexcon & Sys., Inc.,* 122 F.R.D. 482, 491 (W.D.La.1988); *Hisaw v. Unisys Corp.,* 134 F.R.D. 151, 152 (W.D.La.1991) (same), district courts within the Second Circuit apply a less protective rule, holding that " 'opinion work product enjoys a *near absolute immunity and can be discovered only in very rare and extraordinary cases ... where weighty considerations of public policy and proper administration of justice would militate against nondiscovery.'* " *P. & B. Marina, Ltd. Partnership v. Logrande,* 136 F.R.D. 50, 57 (E.D.N.Y.1991) (quoting *In re Murphy,* 560 F.2d 326, 336 (8th Cir.1977)); *Santiago v. Miles,* 121 F.R.D. 636, 639 (W.D.N.Y.1988) ("Access to mental impressions, if ever to be permitted, may occur

'only on a strong showing "of necessity and unavailability by other means." ' ") (citing *In re John Doe Corp.,* 675 F.2d 482, 492 (2d Cir.1982)); *see also Sporck v. Peil,* 759 F.2d 312, 316 (3d Cir.), *cert. denied,* 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985).

■ Generally, work performed by an attorney to prepare and prosecute a patent application does not fall within the parameters of the work-product protection, *see, e.g., McNeil–PPC, Inc. v. Procter & Gamble Co.,* 136 F.R.D. 666, 671 (D.Colo.1991); *Detection Sys., Inc. v. Pittway Corp.,* 96 F.R.D. 152, 155 (W.D.N.Y.1982) (quoting *Choat v. Rome Indus. Inc.,* 462 F.Supp. 728, 732 (N.D.Gal.1978) and *Hercules v. Exxon Corp.,* 434 F.Supp. 136, 152 (D.Del. 1977)), since the prosecution of patent application is a non-adversarial, *ex parte* proceeding. Thus, work done to that end is not "in anticipation of" or "concerning" litigation. This rule does not, however, preclude application of the work-product protection to work performed to prosecute a patent application if it was *also* performed in anticipation of or concerning litigation. *See Oak Indus.,* 687 F.Supp. at 375. Work is protectible work product if the "primary motivating purpose" behind the performance of the work was to assist in the pending or impending litigation. *See Santiago,* 121 F.R.D. at 641; *In re Atlantic Fin. Mgmt. Secs. Litig.,* 121 F.R.D. 141, 144 (D.Mass.1988) (quoting *United States v. Gulf Oil Corp.,* 760 F.2d 292, 295 (Temp.Emer.Ct.App.1985)).

The questions objected to on the grounds of the work-product doctrine relate to subjects that can be grouped into four categories: (1) the Deponents' preparation for their depositions; (2) prosecution of the '028 Patent; (3) prosecution of the '069 Patent; and (4) the transfer of information and documents from the Brumbaugh Firm to the Bromberg Firm.[2]

As a preliminary matter, the following questions do not in any conceivable way

---

**2.** A complete list of the questions objected to is contained in Appendix A to Rotron's Memorandum in Opposition. References to "Question ___" relate to the numbers designated in that Appendix.

implicate the mental processes of the Deponents or of the Bromberg Firm, and therefore are not protected under the work-product doctrine: Questions 11, 14–16, 18–20, 28–31, 35–39, 46–49, 51–52, 57, 59, 60–63, 65–66, 68–69, 71–74, 76–78, 80–82, 86–89, 93, 96–98, 100–101. *See Nutmeg Ins. Co. v. Atwell, Vogel & Sterling*, 120 F.R.D. 504, 509 (W.D.La.1988). (work-product doctrine does not shield against discovery of facts learned by attorney).

### a. *Preparation for Depositions*

■ Rotron argues that questions posed by Minebea to MacBlain and Tenser regarding their preparation for their depositions are impermissible because they constitute a back-door attempt to discover the Bromberg Firm's strategy in preparing for trial. Specifically, these Deponents were asked to indicate whether they had met with anyone or reviewed any materials in preparation for their depositions and to identify the documents reviewed, if any.

Under similar circumstances, some courts have extended the work-product protection where the party opposing discovery represents that "the selected documents represent[ ], as a group, counsel's legal opinion as to the evidence relevant both to the allegations in the case and the possible legal defenses." *Sporck*, 759 F.2d at 313; *see also Bercow v. Kidder, Peabody & Co.*, 39 F.R.D. 357, 359 (S.D.N.Y.1965). The Second Circuit has admonished that application of this extension of the work-product doctrine "depends upon the existence of a real, rather than speculative, concern that the thought processes of . . . counsel in relation to pending or anticipated litigation would be exposed." *Gould, Inc. v. Mitsui Mining & Smelting Co.*, 825 F.2d 676, 680 (2d Cir.1987); *see also Hisaw*, 134 F.R.D. at 153.

In the absence of anything more concrete than Rotron's conclusory statement that the deposition-preparation questions implicate the mental impressions of the Bromberg Firm, I am inclined to compel answers to all of these questions. Nevertheless, balancing Minebea's interest in knowing what material the Deponents reviewed in preparing for their depositions, *cf.* F.R.D. 612, and Rotron's interest in not disclosing its trial strategy, the Deponent's shall be required to respond only to questions as to whether they reviewed documents in preparation for the deposition and questions as to the identity of those documents, if any. The deponents are not required to answer questions as to whether they were given the document(s) by counsel for Rotron, however. *See Mendenhall v. American Booksellers Assoc., Inc.*, No. 88 Civ. 8998 (KTD), slip op. at 4, 1990 WL 422415, 1990 U.S.Dist.Lexis 5153 (S.D.N.Y. May 1, 1990). Thus, the Deponents are hereby ordered to answer Questions 1–7 and but not Questions 8–9, which seeks protected opinion work product.

### b. *Prosecution of the '028 and '069 Patents and the transfer of information between the Brumbaugh Firm and the Bromberg Firm*

■ Questions relating to the prosecution of the '028 and '069 Patents and to the transfer of information between the Brumbaugh Firm and the Bromberg Firm go largely to the prior art known to the Deponents at the time the Patents were prosecuted, specifically, the Muller '104 Patent, the Muller '347 Patent, the Muller '963 Patent and the Doemen '005 Patent. Rotron maintains that these questions implicate protected opinion work product because, as of February 21, 1984 when MacBlain learned of the Papst Action, all work performed to prosecute the '028 and '069 Patents was also performed in anticipation of litigation.

While I am prepared to accept Rotron's assertion that as of February 21, 1984 it anticipated litigation over the '028 Patent, this date has no relevance to the '069 Patent because neither the Papst Action nor the Matsushita Actions involved that patent. Moreover, Rotron could not possibly have anticipated litigation over the '069 Patent as of that date because that patent did not even issue until October 18, 1988. Rotron argues, nevertheless, that the Patents should be dovetailed for purposes of determining a date after which litigation

was anticipated because they both emanate from the '828 Application.

Be that as it may, it is undisputed that, as of June 28, 1983, the PTO required Rotron to file separate applications for what ultimately issued as the '028 and '069 Patents on the grounds that "[t]he inventions are separate and distinct." *See* Minebea Reply Memo Tab 1. Moreover, Rotron has presented no basis upon which to conclude that it ever suspected that the invention underlying the '069 Patent was being infringed by Matsushita or anyone else. In fact, Rotron has failed to establish any date after which it anticipated litigation over the '069 Patent specifically.

I therefore conclude that questions pertaining to the mental impressions, conclusions, opinions or legal theories of the Deponents pertaining to the prosecution of the '028 Patent after February 21, 1984 seek protected opinion work product. In the absence of evidence establishing a date after which Rotron anticipated litigation over the '069 Patent, there is no basis at this time for restricting questions on this subject. Thus, based on the foregoing, the following questions are protected as opinion work product: Questions 10, 13, 21–26, 32–34, 40–45, 50, 53–54, 67 (pertaining to the July 12, 1984 Amendment); Question 55 (pertaining to the March 12, 1984 Amendment); 70, 75 (pertaining to the Brumbaugh Firm's monitoring of Papst Action); and, to the extent they implicate mental impressions, conclusions, opinions or legal theories formed in anticipation of litigation over the '028 Patent, Questions 90–92, and 94. The following questions do not seek opinion work product: Questions 17, 27 (pertaining to the February 10 Disclosure Statement, which pre-dates the anticipation of litigation over the '028 Patent); and Questions 56, 58, 64, 79, 83–85 (pertaining exclusively to the prosecution of the '069 Patent).

Because Minebea has not attempted to establish the existence of such circumstances militating in favor of compelling discovery of those questions implicating opinion work product, *P. & B. Marina,* 136 F.R.D. at 57 (discovery of opinion work

product may be ordered only in " 'very rare and extraordinary cases ... where weighty considerations of public policy and proper administration of justice would militate against nondiscovery' ") (citation omitted); *Santiago,* 121 F.R.D. at 639, this question shall not be addressed.

3. Attorney–Client Privilege

██ Rotron has also objected to many questions asked of the Deponents on the basis of the attorney-client privilege. To encourage complete disclosure of information between attorneys and their clients, *Upjohn v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981), the attorney-client privilege protects confidential communications by a client to his attorney for the purpose of obtaining a legal opinion or legal services and the legal advice or service rendered in confidence by the attorney. *In re Kaplan,* 110 F.R.D. 161, 163 (S.D.N.Y.1986); *see Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). The privilege attaches only to the communication between the attorney and the client, not to the underlying facts or information. *Knogo Corp. v. United States,* 213 U.S.P.Q. 936, 940 (Ct.Cl.1980); *see United States v. Cunningham,* 672 F.2d 1064, 1073 n. 8 (2d Cir.1982), *cert. denied,* 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1984). "In other words, the client cannot assert the privilege if asked how the invention works, but he can assert the privilege if he is asked to recount what he told his attorney concerning how the invention works." *Knogo,* 213 U.S.P.Q. at 940. The privilege applies if: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding and not (d) for the purpose of committing a crime

or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. *United States v. Davis,* 131 F.R.D. 391, 398 (S.D.N.Y.1990); *United States v. United Shoe Mach. Corp.,* 89 F.Supp. 357 (D.Mass. 1950). The party asserting the privilege bears the burden of establishing that facts exist to support the claim of privilege. *Bulk Lift,* 122 F.R.D. at 492.

■■■ The attorney-client privilege is complicated in the context of patent litigation by the general rule that communications of "technical information" between the client and the attorney for the purpose of submission to the PTO in the patent application are not privileged. *See, e.g., Jack Winter, Inc. v. Koratron Co.,* 54 F.R.D. 44, 46 (N.D.Cal.1971). This is not an absolute rule, however: where the primary purpose of the communication is securing or conveying legal advice, the privilege will be upheld despite the inclusion of technical data in the communication. *Cuno, Inc. v. Pall Corp.,* 121 F.R.D. 198, 201–02 (E.D.N.Y.1988) (citing *Hercules Inc. v. Exxon Corp.,* 434 F.Supp. 136 (D.Del. 1977) and *Knogo Corp. v. United States,* 213 U.S.P.Q. 936 (Ct.Cl.1980)); *Status Time Corp. v. Sharp Elecs. Corp.,* 95 F.R.D. 27, 31 (S.D.N.Y.1982). Thus, whereas the privilege will apply to communications seeking or conveying a legal opinion on the patentability or infringement of an invention, *see, e.g., Minnesota Mining & Manufacturing Co. v. Ampad Corp.,* 7 U.S.P.Q.2d 1589 (D.Mass.1987); *Cuno,* 121 F.R.D. at 202; *Knogo,* 213 U.S.P.Q. at 942 ("There is no longer any question that such opinions are legal opinions."), it will not protect communications such as the affidavit of the client, an oath or a declaration of the applicant made with the intention that the attorney transmit the communication to the PTO. *Knogo,* 213 U.S.P.Q. at 940 n. 4.

The questions to which Rotron objected pertain to subjects that can be grouped into three categories: (1) prior art searches conducted for purposes of prosecuting the '828 Application; (2) Rotron personnel knowledge of relevant prior art; and (3) the Brumbaugh Firm's monitoring of the Papst Action. In addition, Rotron has refused to produce a number of documents on the basis of the attorney-client privilege and the work-product doctrine. In view of the principles discussed above, I conclude the following:

a. *Prior Art Searches*

The questions pertaining to the prior art searches relate to three letters: a January 21, 1981 letter from Tenser to Samuel Meerkreebs ("Meerkreebs"), a Washington, D.C. attorney, requesting that he conduct a prior art search (the "January 21, 1981 Letter"); (b) a letter dated February 12, 1981 from Meerkreebs to Tenser reporting the results of the search (the "February 12, 1981 Letter"); and (c) a letter dated April 9, 1981 from Tenser to Mr. Sulzer ("Sulzer") at Rotron conveying the results of the search and an opinion as to patentability of the patents-in-suit as well as another invention (the "April 9, 1981 Letter").

With respect to the January 21, 1981 and February 12, 1981 Letters, having not been supplied the underlying documents for *in camera* review, it is not possible at this time to determine (a) whether they implicate communications between the attorneys and their clients; (b) whether the primary purpose of those communications was to obtain legal advice; or (c) whether they were transmitted and held in confidence. Thus, pending production of those documents for *in camera* review, I defer ruling as to Questions 102–117, 121–124, 126–129 and those portions of Questions 118–120 and 125 that relate to these two letters.

■■■ As for the April 9, 1981 Letter, there is no dispute that Tenser's purpose was to convey to Rotron his opinion regarding the patentability of, among other things, the inventions underlying the patents-in-suit. *See* MacBlain Dec. at 5 (regarding document bearing Bates No. 900006–10); Minebea Memo. at 49 (terming April 9, 1981 Letter the "Search *Opinion*"). There is no question that such opinions are legal in nature. *See, e.g., Knogo,* 213 U.S.P.Q. at 942. I therefore find that Questions 125, 130–132 and those parts of Questions 118–120 pertaining to the April 9, 1981 Letter are precluded on

the basis of the attorney-client privilege. *See Status Time*, 95 F.R.D. at 31 (citing *D & S Plug Corp. v. Colvin Motor Parts, Inc.*, 166 U.S.P.Q. 391, 392 (Ct.Cl.1970)).

### b. *Rotron Personnel Knowledge of Prior Art*

■ The second category of questions to which Rotron objected on the grounds of the attorney-client privilege pertain to communications between Tenser and MacBlain and Rotron employees concerning prior art. As to this category of questions, Rotron simply states in its memorandum of law that these questions "concern Rotron, the client, seeking and the Brumbaugh Firm rendering legal advice." Rotron Memo. at 56. However, Rotron has failed to provide any factual submission from which it can be concluded that these communications took place in pursuit of legal advice rather than in some other context. The mere existence of an attorney-client relationship does not transform every attorney-client communication into a privileged one. The party asserting the privilege "must provide the court with enough information to enable the court to determine privilege, and the proponent must show by affidavit that precise facts exist to support the privilege. *Bulk Lift*, 122 F.R.D. at 492. Thus, the attorney-client privilege does not protect the information sought in Questions 133–137, and the Deponents are therefore ordered to answer these questions.

### c. *Brumbaugh Firm's Monitoring of Papst Action*

As for the third category, having concluded that litigation was anticipated once MacBlain learned of the Papst Action, it would seem logical that communications between the Deponents and Rotron regarding that action would be legal in nature. Nevertheless, Rotron has failed to provide factual support for its claim of privilege as to these questions (Questions 138–145), specifically, as to whether the answers would implicate attorney-client communications that were intended to be confidential. Moreover, Questions 140–143 clearly do not implicate such communications.

### 4. Document Requests

Resolution of the motion to compel the production of the documents objected to on the basis of the attorney-client privilege and work-product doctrine shall be deferred pending *in camera* review.

*Conclusion*

For the foregoing reasons, Minebea's motion to compel is granted in part and denied in part. Rotron's motion to dismiss Minebea's motion is denied. The parties' respective applications for costs, including attorneys' fees are denied. A list of those Questions which the Deponents are hereby ordered to answer is provided in the Appendix to this Opinion.

It is so ordered.

### APPENDIX

*Motion to compel granted as to Questions:*

1–7, 11, 14–20, 27–31, 35–39, 46–49, 51–52, 56–66, 68–69, 71–74, 76–89, 93, 96–98, 100–101, 133–145.

*Motion to compel denied on grounds of work-product doctrine as to Questions:*

8–10, 12–13, 21–26, 32–34, 40–45, 50, 53–55, 67, 70, 75, 95.

*Motion to compel denied on grounds of work-product doctrine to the extent seeking attorneys' opinions, etc. formed in anticipation of litigation over '028 Patent as to Questions:*

90–92, 94.

*Motion to compel denied on grounds of attorney-client privilege as to Questions:*

125, 130–132, 118–120 (parts pertaining to April 9, 1981 Letter only).

*Determination deferred pending* in camera *review as to Questions and Documents:*

102–117, 121–124, 126–129, and those portions of 118–120 and 125 pertaining to January 21, 1981 and February 12, 1981 Letters, all requested documents.