662 F.2d 1073
 64 A.L.R.Fed. 457, 9 Fed. R. Evid. Serv. 578
 In re John DOE, et al., Petitioners.
In The Case Of Grand Jury Subpoena Duces Tecum to Custodian
Of Records, Richard ROE.
John DOE, et al., Appellants,
v.
UNITED STATES of America, Appellee.
In re Grand Jury Subpoena Duces Tecum to Custodian of
Records, Richard ROE.
 Nos. 81-1611, 81-1612.
 United States Court of Appeals,
Fourth Circuit.
 Argued Sept. 1, 1981.
Decided Oct. 26, 1981.
 
 Paul Mark Sandler, Baltimore, Md., for appellants.
 David Dart Queen, Asst. U. S. Atty., Baltimore, Md. (J. Frederick Motz, U. S. Atty., Baltimore, Md., on brief), for appellee.
 Before WINTER, Chief Judge, and BUTZNER and SPROUSE, Circuit Judges.
 SPROUSE, Circuit Judge:
 
 
 1
 John Doe (appellant) and the law partnership of which he is a member seek review of the order of the district court denying their motions relating to the subpoena of records containing attorney work product by a federal grand jury in Baltimore, Maryland, which is investigating John Doe.[1]
 
 
 2
 This is both a petition for mandamus seeking to compel the district court to quash the grand jury's subpoena, and an appeal of the court's order declining to do so. The custodian of these records is the subject of the subpoena, and as such falls within the rule that unless and until a witness has been held in contempt, he has no standing to appeal from an order directing him to produce documents before a grand jury. See United States v. Ryan, 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971). John Doe, however, may seek direct review in this court in order to preserve his assertion of the attorney work product doctrine. In re Grand Jury Proceedings, 604 F.2d 798, 802 (3d Cir. 1979). Therefore, we need not consider the petition for mandamus, since our consideration of the direct appeal resolves the issues presented.
 
 
 3
 John Doe is an attorney and a member of a small firm in Baltimore. He represented another attorney (client) in three trials in 1975 and 1976 on federal criminal charges. In the first trial, the client was acquitted, and a second trial on different charges ended in a hung jury. At the third trial the client was convicted. Doe, after expressing initial reluctance arising from a fee dispute and other considerations, also represented the client in an unsuccessful appeal of that conviction in this court. The client subsequently informed representatives of the United States Attorney's office in Baltimore that John Doe had advised him to lie during his trials, to bribe witnesses and had otherwise engaged in attempts to procure false testimony.
 
 
 4
 The United States Attorney instigated a grand jury investigation, and presented to it the testimony of the client concerning these alleged criminal acts of Doe. Also presented to the grand jury were records of the attorney which he had inadvertently turned over to the client after completion of the client's criminal litigation. These records of the attorney contain his handwritten notes or comments which the government contends corroborate the client's testimony that the attorney suborned perjury, conspired to obstruct justice and obstructed justice during the client's trials. The notations concededly comprise both fact work product and opinion work product[2] of the attorney generated in preparation for the trials. Apart from the documents presented to the grand jury by the former client, all or principally all of the attorney's records relating to the client's former trials are deposited in the files of his law partnership. At the government's request, a subpoena duces tecum was issued to the partnership, as custodian of Doe's records, ordering it to produce them to the grand jury. The appellant moved to quash the subpoena duces tecum on grounds that, as attorney work product, the written material is privileged, and cannot be used in a proceeding against the attorney.[3] The appellant also moved that the attorney's records given to the grand jury by the client be returned to him and that the grand jury be dismissed as having been tainted by its improper consideration of the privileged material.
 
 
 5
 The district court found that all the involved records were either fact or opinion work product of the attorney, but that if requisite need could be shown, the fact work product must be produced and that the opinion work product might also be subject to subpoena under a fraud exception to the work product rule. The district court, therefore, ordered an in camera hearing, requiring the government to demonstrate the need for, and unavailability of, the otherwise privileged material and a prima facie case of fraud by the attorney and/or his client during the latter's trial, to determine if the court would compel obedience to the subpoena. After an in camera ex parte hearing, the court found that the government had demonstrated a prima facie case of fraud, allowing the disclosure of opinion work product. It also found that as to the fact work product, the government had demonstrated a need for the records, and that information contained in them was otherwise unavailable to the government without undue hardship. The court made no specific finding as to the need for, or unavailability of, the opinion work product. In this case, however, a common factual background underlies evaluation of the government's need for this material and the unavailability of equivalent information.
 
 
 6
 The appellant contends that the district court erred in ruling that an attorney does not have an absolute privilege against the use, without the attorney's consent, of any information derived only from attorney opinion work product, arguing that there is no "fraud" exception to the opinion work product rule. The appellant also contends that even if there is such a fraud exception, the circumstances of this grand jury investigation do not compel its application. Further, he argues that the court erred in not requiring a showing of extraordinary need for, and the inability of, obtaining the substantial equivalent of the otherwise privileged documents, and in not requiring the government to establish a prima facie case of attorney fraud without reliance upon the disputed documents which the government had obtained from the former client. The appellant raises other points relating to the return of the documents and dismissal of the grand jury which need not be resolved in view of our disposition of the remaining issues.
 
 
 7
 An attorney must be free to advise clients and prepare their cases for trial without undue interference from the opposition or the government. This concept, inherent in the extraordinary "work product" rule, is a critical attribute of our adversary judicial system. There are exceptions to the rule, but simply stated, an attorney is not required to divulge, by discovery or otherwise, facts developed by his efforts in preparation of the case or opinions he has formed about any phase of the litigation, even if they have been reduced to writing. This has been an historic common law rule of evidence, 8 Wigmore, Evidence § 2318 (McNaughton rev. 1961), and federal courts for three decades have been guided in applying the work product doctrine by the Supreme Court's decision in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). There the Court said:
 
 
 8
 Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of any attorney.
 
 
 9
 Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways-aptly though roughly termed by the Circuit Court of Appeals in this case as the "work product of the lawyer." Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.
 
 
 10
 We do not mean to say that all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases. Where relevant and nonprivileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had.
 
 
 11
 Id. at 510, 511, 67 S.Ct. at 393, 394.
 
 
 12
 Judge Field, in expressing for this court the rationale supporting this rule, said:
 
 
 13
 Hickman clearly stands for the principle that the integrity of the adversary process must be safeguarded in spite of the desirability of the free interchange of information before trial. Its overriding concern is that the lawyer's morale be protected as he performs his professional functions in planning litigation and preparing his case. This work product immunity is the embodiment of a policy that a lawyer doing a lawyer's work in preparation of a case for trial should not be hampered by the knowledge that he might be called upon at any time to hand over the result of his work to an opponent.
 
 
 14
 Duplan Corp. v. Moulinage et Retorderie de Chavanoz, 487 F.2d 480, 482-83 (4th Cir. 1973) (Duplan I) (footnote omitted).
 
 
 15
 The rule and rationale of Hickman have been codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure. Although expressed in the Federal Rules in terms of discoverability of relevant material in civil cases, the work product principle also applies to criminal trials and grand jury proceedings. See United States v. Nobles, 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) (criminal trials); In re Grand Jury Proceedings (Duffy), 473 F.2d 840 (8th Cir. 1975) (grand jury proceedings).
 
 
 16
 No court construing this rule, however, has held that an attorney committing a crime could, by invoking the work product doctrine, insulate himself from criminal prosecution for abusing the system he is sworn to protect. Courts have spoken of the conflict between two public policies: The policy which underlies the work product rule and which is expressed by Hickman and Duplan I -that of unfettered representation by attorneys, and the sometimes conflicting policy that litigants fraudulently abusing the rule should not secure its advantages. See In re Grand Jury Proceedings, 73 F.R.D. 647 (M.D.Fla.1977). Some courts, without articulating the impact of this latter concern, have spoken in terms of a nearly absolute opinion work product privilege-holding or at least indicating that in only the rarest and most extraordinary of circumstances should the opinion work product privilege be pierced so as to compel involuntary access by the opposing side in civil and/or criminal litigation. In re Grand Jury Investigation (Sturgis), 412 F.Supp. 943 (E.D.Pa.1976); In re Terkeltoub, 256 F.Supp. 683 (S.D.N.Y.1966). Other courts, although recognizing the crucial necessity of protecting opinion work product, generally have indicated that there may be compelling circumstances in which work product protection will not be available. Upjohn Company v. United States, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (Jan. 13, 1981); In re Special September 1978 Grand Jury, 640 F.2d 49 (7th Cir. 1980); In re Grand Jury Investigation, 599 F.2d 1224 (3d Cir. 1979); In re Murphy, 560 F.2d 326 (8th Cir. 1977). Some have held that the commission of fraud[4] by the client or the attorney during the pendency of litigation, or by the client in seeking the attorney's advice, constitutes an exception to the work product rule. See In re Grand Jury Proceedings, 604 F.2d 798 (3d Cir. 1979).
 
 
 17
 The Supreme Court, in declining to decide whether a "fraud" exception to the work product rule exists said:
 
 
 18
 Based on the foregoing, some courts have concluded that no showing of necessity can overcome protection of work product which is based on oral statements from witnesses.... Those courts declining to adopt an absolute rule have nonetheless recognized that such material is entitled to special protection.... We do not decide the issue at this time....
 
 
 19
 Upjohn, supra, 101 S.Ct. at 688 (citations omitted). Likewise, this court recognized the issue but was not called upon to decide it in Duplan Corp. v. Deering Milliken, Inc., 540 F.2d 1215 (4th Cir. 1976) (Duplan III). The case sub judice, however, squarely presents the issue and we hold that there is a fraud exception to the opinion work product doctrine.
 
 
 20
 Most of the decisions fashioning a fraud exception have dealt with a client's use of an unwitting attorney to carry out a scheme to fraudulently or criminally subvert the normal progress of litigation, holding that such clients forfeit or waive the protection of the work product doctrine. See In re Grand Jury Proceedings, 604 F.2d 798 (3d Cir. 1979); In re Murphy, 560 F.2d 326, 337 (8th Cir. 1977), and cases cited therein. Appellant here, however, argues that the "privilege" is that of the attorney and not of the client. He argues that clients can waive work product protection as to themselves, but that the client cannot waive it as to the attorney and that fraud does not forfeit the attorney's ability to rely on the work product doctrine. The answer is that the ability to protect work product normally extends to both clients and attorneys, In re Special September 1978 Grand Jury, 640 F.2d 49 (7th Cir. 1980), and the attorney or the client, expressly or by conduct, can waive or forfeit it, but only as to himself, and the fraud exception applies to both attorneys and clients.
 
 
 21
 The fraud exception to the rule against compulsory disclosure of a lawyer's opinion work product must apply in proceedings against a suspected lawyer equally or even more readily than in a proceeding to obtain the information for use against a client who utilized fraudulent practices to obtain the lawyer's service. In re Grand Jury Proceedings, 73 F.R.D. 647 (M.D.Fla.1977); see In re Murphy, 560 F.2d 326, 366 n. 19 (8th Cir. 1977). It is true that the lawyer has the ultimate expression of the work product rule, inasmuch as it is his work product and his unfettered representation on behalf of the client which is being protected. The purpose of the work product doctrine nonetheless is not to endow lawyers as individuals with an untouchable status. The doctrine was designed to assure future litigants uninterrupted and unimpaired access to, and use of, judicial mechanisms. The work product rule recognizes the lawyer's services as an indispensable part of the judicial scheme, but it was not designed as a fringe benefit for protecting lawyers who would, for their personal advantage, abuse it.
 
 
 22
 We believe that it is the sense of Upjohn, In re Grand Jury Investigation, 599 F.2d 1224 (3d Cir. 1979), and In re Special September 1978 Grand Jury, 640 F.2d 49 (7th Cir. 1980), that while the protection of opinion work product is not absolute, only extraordinary circumstances requiring disclosure permit piercing the work product doctrine. We acknowledge that the opinion work product rule should be jealously guarded to foster the general policy expressed in Hickman, Rule 26(b)(3) and Duplan I. While we will not attempt to catalogue all conceivable extraordinary circumstances which would make the fraud exception available, they inevitably exist when an attorney, charged as a fiduciary in the administration of justice, attempts to use the opinion work product rule to shield himself from criminal prosecution arising from his actions in prior litigation. The government presented to the district court a prima facie case showing such illegal activity on the part of lawyer John Doe-that he advised his client to lie on the witness stand, and was a knowing participant in a plan to have witnesses testify falsely on his client's behalf, to have documents altered or destroyed and to bribe witnesses with cash payments. We, of course, make no judgment as to the merits of the case, as the prima facie showing of fraud on the court was all that was required to support the trial court's action compelling compliance with the subpoena duces tecum.
 
 
 23
 The district court found that the government had proven both a need for the fact work product contained in the subpoenaed records and that it could not obtain the equivalent information without undue hardship. The government represented in argument to the district court that other than the former client, the only source of this information was the witnesses who allegedly gave false testimony at trial. The government argued that obtaining this information from them was not a viable alternative, since they would be put in a position of incriminating themselves, and would probably not have documentary evidence revealing Doe's alleged criminal activity.
 
 
 24
 The need for the opinion work product and the availability of other information similar to it, however, presents a more serious problem. Appellant correctly contends that not only must the government make a prima facie showing of fraud, but must show a greater need for the opinion work product material than was necessary in order to obtain the fact work product material. The reason for this is obvious and was well stated in In re Murphy, 560 F.2d 326, 336 (8th Cir. 1977):
 
 
 25
 An attorney's thoughts are inviolate, ... and courts should proceed cautiously when requested to adopt a rule that would have an inhibitive effect on an attorney's freedom to express and record his mental impressions and opinions without fear of having these impressions and opinions used against the client.
 
 
 26
 It is clear that opinion work product is entitled to substantially greater protection than ordinary work product. Therefore, unlike ordinary work product, opinion work product can not be discovered upon a showing of substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship.... In our view, opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances.... Our unwillingness to recognize an absolute immunity for opinion work product stems from the concern that there may be rare situations, yet unencountered by this court, where weighty considerations of public policy and a proper administration of justice would militate against the nondiscovery of an attorney's mental impressions. Absent such a compelling showing, the attorney's opinion work product should remain immune from discovery.
 
 
 27
 Id. (footnotes and citations omitted). See also, In re Grand Jury Investigation, 599 F.2d 1224, 1231 (3d Cir. 1979).
 
 
 28
 The trial court, in addressing the need and availability requirements here, spoke only in terms of the fact work product in question. This failure to address the requirement of compelling need for the release of opinion work product makes more difficult our task on appeal. The facts on which such a determination must be made, however, are in the record. However the trial court would rule after a remand, we would review its action on these same record facts. Hence, our consideration of this issue is not precluded.
 
 
 29
 In essence, the government demonstrated a prima facie case of conspiracy, obstruction of justice, and subornation of perjury by attorney John Doe, during his representation of the client in the criminal trials. It also demonstrated that it would probably not be able to prosecute John Doe without the evidence, contained in Doe's work product, to corroborate the direct testimony of the client, whose credibility before a jury is obviously less than overwhelming. It also represented that the four witnesses who were allegedly criminally influenced would not cooperate in the investigation of Doe. In addition to the fact that their testifying would raise a serious self-incrimination question, the government has indicated that only access to Doe's files would accurately and completely corroborate or contradict the client's allegations of criminal activity on Doe's part. The government has demonstrated a need for this material and the unavailability of equivalent information meeting the stringent standards suggested by Upjohn, In re Special September 1978 Grand Jury Proceedings, and In re Murphy. It cannot proceed against Doe without the information and cannot obtain it elsewhere. In this instance, the principles of the work product rule are not served by declining to compel release of these documents. If the grand jury investigation against Doe cannot proceed, the criminal justice system will stand under a cloud. In such a case, serious allegations of crimes are recognized, but cannot be resolved, because the crimes, if committed, were perpetrated by an attorney/officer of the court.
 
 
 30
 Finally, the appellant argues that the district court and the grand jury impermissibly considered documents he turned over to the client. His reliance on United States v. Mitchell, 372 F.Supp. 1239 (S.D.N.Y.1973) is misplaced. In that case, the grand jury target's attorney turned over certain documents containing work product to the United States Attorney. The district court suppressed those documents, concluding that the disclosure of that information required not only the attorney's consent, but that of the client. In the case sub judice, there can be no doubt that the client has consented to the disclosure of these documents. The more difficult question is whether, by the release of these documents to the client, Doe has forfeited his ability to invoke the work product doctrine.
 
 
 31
 Recent decisions considering this question have focused on a concern inherent in the work product rule: that since an attorney's work is for his client's advantage, opposing counsel or adverse parties should not gain the use of that work through discovery. The attorney and client can forfeit this advantage, but their actions effecting the forfeiture or waiver must be consistent with a conscious disregard of the advantage that is otherwise protected by the work product rule. Disclosure to a person with an interest common to that of the attorney or the client normally is not inconsistent with an intent to invoke the work product doctrine's protection and would not amount to such a waiver. However, when an attorney freely and voluntarily discloses the contents of otherwise protected work product to someone with interests adverse to his or those of the client, knowingly increasing the possibility that an opponent will obtain and use the material, he may be deemed to have waived work product protection. GAF Corp. v. Eastman Kodak Co., 85 F.R.D. 46 (S.D.N.Y.1979); see United States v. American Telephone and Telegraph Co., 642 F.2d 1285, 1296 (D.C.Cir.1980); see generally 8 C. Wright & A. Miller, Federal Practice and Procedure § 2024 (1970 & 1981 Supp.). Additionally, release of otherwise protected material without an intent to limit its future disposition might forfeit work product protection, regardless of the relationship between the attorney and the recipient of the material. In other words, to effect a forfeiture of work product protection by waiver, disclosure must occur in circumstances in which the attorney cannot reasonably expect to limit the future use of the otherwise protected material.
 
 
 32
 Here Doe's representation of the client had terminated and the material in question was no longer in Doe's possession. In addition, at the time the documents were released, the relationship between Doe and the client was strained due to the client's conviction, loss on appeal, and the conflict concerning Doe's representation and fees, thus vitiating any commonality of interest between Doe and the client. In these particular circumstances, it is difficult to believe that Doe intended to retain control over the client's use or disposition of these documents. Given Doe's apparently unconditional release to the client of the material in question and his failure to take steps to limit the future use of those documents, we can only conclude that Doe substantially and freely increased the possibility of disclosure to, and use by, anyone the client desired, including the United States Attorney. Hence, he effectively forfeited any protection provided by the work product rule; the grand jury, and the district court in evaluating the prima facie case, properly considered these materials.
 
 
 33
 The judgment of the district court is affirmed, and the mandate of this court shall issue forthwith.
 
 
 34
 AFFIRMED.
 
 
 
 [1]
 To protect the secrecy of the continuing grand jury investigation and to insulate the appellants from adverse publicity in the event indictments are not returned, actual names of those involved are not used in this opinion
 
 
 [2]
 By "fact work product" we are referring to those documents prepared by the attorney which do not contain the mental impressions, conclusions or opinions of the attorney. "Opinion work product" is work product that contains those fruits of the attorney's mental processes
 
 
 [3]
 Its use against the client is not in issue. There is no proceeding pending against him, he has waived the privilege and is cooperating with the government in its attempt to obtain an indictment against the attorney
 
 
 [4]
 The term fraud as used here refers to a fraud on the judicial processes perpetrated by a client or his attorney which could be something less than criminal activity, but certainly encompasses criminal activity subverting or attempting to subvert the judicial process