**636**

Raymond SANTIAGO, Reggie Rabb, Anthony George, Aaron Mays, Mark Steele, Jeremiah Smith and Jose Rodriguez, Plaintiffs,

v.

Ronald MILES, Elmira Correctional and Reception Ctr., Howard Novak, Donald McLaughlin, individually and in their official capacities, Defendants.

Civ. No. 86–0694L.

United States District Court,
W.D. New York.

July 26, 1988.

Claudette Spencer and David A. Lewis, Legal Aid Soc., Prisoners Rights Project, New York City, for plaintiffs.

Carlos Rodriguez, Asst. Atty. Gen., New York State Dept. of Law, Rochester, N.Y., for defendants.

## DECISION AND ORDER

KENNETH R. FISHER, United States Magistrate.

This is a class action pursuant to 42 U.S.C. § 1981 and § 1983 on behalf of black and hispanic prisoners at the Elmira Correctional Facility. Plaintiffs allege intentional discrimination in the assignment of housing, in the assignment of programs, and in the administration of discipline by defendants who are employees of the New York State Department of Correctional Services at Elmira Correctional Facility.

Plaintiffs have moved to compel discovery of several documents as follows: (1) all inmate grievances filed at the Elmira Correctional Facility between January, 1984 and the present, (2) a list of preferred program assignments referred to by Richard Cerio in his December 8, 1987 deposition, (3) all weekly reports of preferred program assignments at the Elmira facility, (4) computer printouts from Albany showing all of the work locations in Elmira and the ethnicity of inmates in those locations, and (5) the complete personnel file of Correction Officer Art Wichtowski, First Officer of the Cage Floor at Elmira Correctional Facility. This motion has been referred to the Magistrate pursuant to 28 U.S.C. § 636(b)(1)(A).

The parties have resolved all but one of these requests at oral argument of the motion. Left for decision is the motion to compel discovery of computer generated material. Samples of the printouts have been submitted *in camera,* and they fall within two categories. The first set of documents was directed to be prepared in early 1987, after this lawsuit began, by Assistant Attorney General Richard Barrantes, then an assistant counsel with the Department of Correctional Services. In response to the filing of the lawsuit, Bar-rantes met with Elmira Correctional Facility officials and then developed a computer program with another unspecified DOCS employee which generated these documents.

Barrantes describes this process as follows: "The purpose of these meetings was to discuss the present 42 U.S.C. § 1983 civil rights action, relevant case law and the data, to wit: statistical analysis, deponent considered necessary in preparation of a defense to this action." (Barrantes supplemental affidavit, at ¶ 8). The unnamed DOCS employee "transmitted" printouts in this first category directly to Barrantes. Included in these documents are a "statistical analysis" of the disparity in job assignments by ethnicity and "raw data pertaining to the ethnic distribution of inmates in preferred assignments" (Barrantes supplemental affidavit, at ¶ 10).

For awhile, these same printouts were also sent to officials at Elmira because the "raw data facilitated the preparation of ... ethnic distribution reports ... by Richard Cerio at Elmira Correctional Facility." (Barrantes supplemental affidavit, at ¶ 11). Since September of 1985, these ethnic breakdown lists had been prepared at the facility. The computer material sent to Elmira was later "modified to exclude, among other things, the statistical analysis and the programs not regarded as preferred" (Barrantes supplemental affidavit, at ¶ 12). Barrantes admits that the computer documents in this second category were used by Cerio for business purposes, but contends that, because "[a]ll of the information contained in Exhibit B [the second category] ... is derived from the information contained in Exhibit A [the first category] ..., both of these documents should be considered as work product and deemed privileged" (Barrantes affidavit at ¶ 14).

Defendants have consented to discovery of Cerio's monthly/weekly ethnic breakdown lists, but they resist discovery of the computer generated documents. The latter differ in that both sets of computer generated material contain a "cross-tabulation ... showing the statistical significance of

any disparity in the distribution of job assignments by ethnicity." (Barrantes original affidavit at ¶ 5).

Analysis of defendants' attorney work-product objection to discovery of these documents begins with an examination of Fed. R.Civ.P. 26(b)(3), which provides as follows:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

*See Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

There can be little doubt that the printouts produced from a computer program developed by counsel and another government employee in response to the filing of this lawsuit are "documents and tangible things ... prepared in anticipation of litigation or for trial" within the meaning of Rule 26(b)(3). The documents in the first category are therefore subject to the qualified immunity provided for in the rule, and plaintiffs do not seriously dispute this proposition (Supplemental Memorandum, at 4). The issue in this case is whether defendants may avoid discovery, even in the face of plaintiffs' asserted showing of substantial need, because an examination of the printouts would involve "disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Fed.R.Civ.P. 26(b)(3).

The computer printouts, produced from a program developed by counsel for this very litigation, contain raw data not protected by the attorney work product doctrine. However, the printouts themselves reflect, because of counsel's participation in developing the computer program, an attorney's "selection process [which] itself represents defense counsel's mental impressions and legal opinions as to how the evidence in the documents relates to the issues and defenses in the litigation." *Sporck v. Peil,* 759 F.2d 312, 315 (3rd Cir.1985), *cert. denied,* 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985). As stated in *Sporck,* "We believe that the selection and compilation of documents by counsel in this case in preparation for pretrial discovery falls within the highly-protected category of opinion work product." *Id.,* 759 F.2d at 316. *Accord, Shelton v. American Motors Corporation,* 805 F.2d 1323, 1329 (8th Cir.1986); *James Julian, Inc. v. Raytheon Company,* 93 F.R.D. 138, 144 (D.Del.1982); *Berkey Photo, Inc. v. Eastman Kodak Company,* 74 F.R.D. 613, 616 (S.D.N.Y.1977).

The Second Circuit has recognized the selection and compilation doctrine as a "narrow exception" to the general rule that documents received by lawyers from their clients, "which would not be protected if they remained in the clients' hands, would not acquire protection merely because they were transferred" to the lawyer. *Gould Inc. v. Mitsui Mining & Smelting Co., Ltd.,* 825 F.2d 676, 679–80 (2d Cir.1987). However, the circuit court held that application of this narrow exception "depends upon the existence of a real, rather than speculative, concern that the thought processes of ... counsel in relation to pending or anticipated litigation would be exposed." *Id.,* at 680. In addition, the court stated that application of the *Sporck* exception may depend on the equities of the case, which includes consideration whether "the files from which documents have been culled by ... [counsel] were not otherwise available to ... [the party] or were beyond the reasonable access to [the party]." *Id.,* 825 F.2d at 680.

The discussion of the equities of the case might, at first glance, suggest a retreat from the nearly "absolute" protection af-

forded mental impression work product under Fed.R.Civ.P. 26(b)(3). *See In re Murphy,* 560 F.2d 326, 336 (8th Cir.1977); *Duplan Corporation v. Moulinage et Retorderie de Chavanoz,* 509 F.2d 730, 733–35 (4th Cir.1974), *cert. denied,* 420 U.S. 997, 95 S.Ct. 1438, 43 L.Ed.2d 680 (1975). The Supreme Court has made "clear" that mental impression "work product cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship." *Upjohn Company v. United States,* 449 U.S. 383, 401, 101 S.Ct. 677, 688, 66 L.Ed.2d 584 (1981) (reversing a Magistrate's discovery order upon such a showing). The Court refused, however, to decide whether mental impression "material is always protected by the work-product rule," and instead simply stated that "a far stronger showing of necessity and unavailability by other means" is made applicable to mental impression work product than is made applicable to other work product by Fed.R.Civ. P. 26(b)(3). *Upjohn Company v. United States,* 449 U.S. at 401–02, 101 S.Ct. at 688–89.

The Second Circuit has also not decided whether mental impression work product is always protected. In *In re John Doe Corporation,* 675 F.2d 482 (2d Cir.1982), the Court recognized that *Upjohn* left the issue open when it observed that "work-product involving the mental processes of attorneys need to be divulged, *if at all,* only on a strong·showing 'of necessity and unavailability by other means.' 449 U.S. at 402 [101 S.Ct. at 689]." *In re John Doe Corporation,* 675 F.2d at 492. The court stated that such work product is "entitled to the greatest protection available under the work-product immunity," *id.,* 675 F.2d at 493, and it described the case before it as "the kind of rare occasion in which an attorney's mental processes are not immune." *Id.,* 675 F.2d at 492 (work product in aid of a criminal scheme) (citing *In re Murphy,* 560 F.2d at 336 n. 19, which states: "The delimitations of any rare exceptions to opinion work product immunity can await future adjudication").

■ Accordingly, this court considers the Second Circuit's statement in the *Gould* case, suggesting that the equities of whether the material is "not otherwise available" or is "beyond the reasonable access" of a party, as but an application of *Upjohn* and its prior decision in the *John Doe Corporation* case. Access to mental impressions, if ever to be permitted, may occur "only on a strong showing 'of necessity and unavailability by other means.'" *In re John Doe Corporation,* 675 F.2d at 492 (quoting *Upjohn* ).

Without referring to the *Gould* case, plaintiffs contend that "these printouts appear to be the *only* documents that contain information about race and program assignments for *all* assignments, and not just those designated by defendants as 'preferred programs.'" (Supplemental Memorandum, at 4) (emphasis supplied). Although plaintiffs refer to certain deposition testimony of Cliff Murphy to sustain this claim, the one page appended to their supplemental memorandum appears to refer exclusively to housing assignments. Moreover, the deposition testimony of Richard Cerio establishes that "when program assignments are made, they're also recorded in the central office" (Cerio deposition, at 6). Cerio testified to "preferred program assignments" (*id.*) and a list of "about 30 of them" that he prepared (*id.,* at 8). However, without evidence to the contrary and because it just makes common sense, the court takes the above quoted testimony as establishing that all program assignments are recorded in the central office, presumably in a computer data base.

■ The suggestion repeatedly made by the court during oral argument, that these records of assignments may be obtained *via* a properly designed computer request, has not been refuted by defendants. Plaintiffs' speculation that defendants' silence on the issue forecloses the possibility of these records' procurement asks the court to assume too much. If the computer program was modified to generate a discrete set of documents for Cerio (see below), it may clearly be modified to generate a printout containing the raw data plaintiffs

need, i.e., a printout showing all of the work locations at Elmira and the ethnicity of inmates in those locations. A request for raw information in computer banks is proper and the information is obtainable under the discovery rules. *Daewoo Electronics Company, Ltd. v. United States,* 650 F.Supp. 1003, 1006 (C.I.T.1986); *Bills v. Kennecott Corporation,* 108 F.R.D. 459, 461–62 (D.Utah 1985); *National Union Electric Corporation v. Matsushita Electric Industrial Co., Ltd.,* 494 F.Supp. 1257, 1260–62 (E.D.Pa.1980).

■ Therefore, with respect to the first category of computer printouts, it is appropriate to apply the *Sporck* doctrine to this case. There can be little question on this record, which establishes that then assistant counsel Barrantes participated in the design of the computer program generating this material in connection specifically with preparing a defense to this lawsuit, that disclosure of the first set of documents would violate the *Hickman v. Taylor* doctrine and Fed.R.Civ.P. 26(b)(3). *Gould Inc. v. Mitsui Mining and Smelting Co., Ltd.,* 825 F.2d at 680; *Sporck v. Peil,* 759 F.2d at 315–17. As to these documents the motion to compel is denied, and the cross-motion for a protective order is granted.

■ The second category of computer generated materials presents a more difficult problem. As a preliminary matter, the fact that documents in the first category were, for a brief time, forwarded to Richard Cerio at the facility for assistance in preparing the monthly/weekly breakdown reports does not deprive them of their character under the rule as attorney work product. Simply delivering attorney work product revealing counsel's mental processes to a governmental client's subordinate employees is a fortuitous circumstance in the work product analysis unless such delivery "has substantially increased the opportunities for potential adversaries to obtain the information." 8 Wright & Miller, *Federal Practice and Procedure* § 2024 p. 210 (1970). *See Transamerica Computer Company, Inc. v. International Business Machines Corporation,* 573 F.2d 646, 647

n. 1 (9th Cir.1978) (Waterman, J.). As stated in *In re Doe,* 662 F.2d 1073 (4th Cir. 1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982), "the forfeiture or waiver must be consistent with a conscious disregard of the advantage that is otherwise protected by the work product rule." *Id.,* 662 F.2d at 1073.

> Disclosure to a person with an interest common to that of the attorney or the client normally is not inconsistent with an intent to invoke the work product doctrine's protection and would not amount to such a waiver. However, when an attorney freely and voluntarily discloses the contents of otherwise protected work product to someone with interests adverse to his or those of the client, knowingly increasing the possibility that an opponent will obtain and use the material, he may be deemed to have waived work product protection.

*Id.,* 662 F.2d at 1081. *See In Re Grand Jury Subpoenas Dated December 18, 1981,* 561 F.Supp. 1247, 1257 (E.D.N.Y.1982); 4 *Moore's Federal Practice* ¶ 26.64[4] (2d ed. 1984).

Because the disclosure here was to a DOCS employee and there is no reason to believe that delivery of the work product to Cerio was "deliberately employed to prepare—and thus, very possibly, to influence and shape—testimony, with the anticipation that these efforts should remain forever unknowable and undiscoverable" *Berkey Photo, Inc. v. Eastman Kodak Company,* 74 F.R.D. at 616, or to "interlac[e]" discoverable fact "with core work product" *Bogosian v. Gulf Oil Corporation,* 738 F.2d 587, 595 (3rd Cir.1984), there is no waiver of the work product immunity for those few documents in the first category which were delivered to Cerio. Disclosure to Cerio was made for the sole purpose of "facilitating" his preparation of the monthly/weekly ethnic breakdown reports which defendants have now turned over to plaintiffs while steadfastly maintaining the confidentiality of the computer material itself. *United States v. Gulf Oil Corporation,* 760 F.2d 292, 295–96 (Em.App.1985).

After an initial period when the printouts sent to Barrantes were forwarded to Cerio at Elmira, the central office modified the format sent to Cerio. This second category of documents was not sent to Barrantes; indeed Barrantes has only second hand information concerning how the program was modified (Barrantes supplemental affidavit at ¶ 12 is based on "information and belief"). Barrantes does not specify who made the modification or for what purpose, but he admits that the second category of printouts are "presently transmitted to the Elmira Correctional Facility" (Barrantes supplemental affidavit, at ¶ 13).

That the computer printouts in the second category were prepared for Cerio's use in the preparation of his monthly/weekly ethnic breakdown reports concerning preferred job assignments is a critical fact, because the monthly/weekly breakdown reports were not prepared in anticipation of litigation. As Barrantes stated in his original affidavit, they "were being prepared on a monthly basis since September, 1985," well before initiation of the lawsuit (Barrantes affidavit at ¶ 4). And as defendant Donald McLaughlin testified at a deposition, these reports were conceived as part of a program developed at Elmira which responded to inmate administrative grievances concerning program assignments. Apparently, at Elmira, the inmates have formed an Inmate Liaison Committee and in 1985 this committee "brought up" the "possibility" of "an ethnic disproportion of inmates into various good jobs" (McLaughlin deposition at 53). Elmira officials assured the Inmate Liaison Committee that "we will now continually monitor that" (id., at 54) and McLaughlin ordered a monthly report for the purpose (id., at 55, 58). McLaughlin testified that this reporting process was ordered by him "long before the suit came down" (id., at 55). Defendant Miles indeed confirmed that the breakdowns "were first prepared on or about September, 1985 to assist in a review of facilities program assignment policies." (Miles affidavit at ¶ 5).

Cerio "looked at" the monthly/weekly reports as they came in, "and balance[d]

... [them] against our ethnicity percentages." (Deposition of Cerio, at 6). Cerio then referred the data, or his interpretation of it, to "the program committee" headed by defendant McLaughlin with appropriate recommendations concerning any disparity. According to Barrantes, the process of examination intensified when the lawsuit was filed (e.g., by preparation of weekly reports), but this basic scenario had been in place several months before the lawsuit commenced or even was envisioned by defendants (McLaughlin deposition, at 55, lines 15–23).

The generally accepted test of whether a document falls within the work product doctrine was set forth in *United States v. Gulf Oil Corporation*, 760 F.2d at 296:

> Our inquiry should be to determine the "primary motivating purpose behind the creation of the document." *See United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir.1981). If the primary motivating purpose behind the creation of the document is not to assist in pending or impending litigation, then a finding that the document enjoys work product immunity is not mandated.

*See also, United States v. El Paso Company*, 682 F.2d 530, 542–43 (5th Cir.1982), *cert. denied*, 466 U.S. 944, 104 S.Ct. 1927, 80 L.Ed.2d 473 (1984); *Colton v. United States*, 306 F.2d 633, 639–40 (2d Cir.1962), *cert. denied*, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963). The court finds that Cerio's original preparation of the monthly/weekly reports was in the ordinary course of the business of the Elmira Correctional Facility to facilitate inmate relationships with DOCS officials by prompt response to administrative inmate complaints.

Defendants' have offered no reason to suppose that Cerio's preparation of the weekly/monthly reports is now any less related to the admitted business purpose for their creation simply because of the institution of this lawsuit. In this case, the computer printouts in the second category which assisted Cerio in this endeavor are, upon the court's *in camera* examination, *see Gould, Inc. v. Mitsui Mining & Smelt-*

**642**

*ing Co., Inc.*, 825 F.2d at 680, wholly different in form and somewhat different in content from the printouts in the first category sent to Barrantes. While there is ample reason to assume that the second category printouts used by Cerio are now prepared with the pending litigation in mind, the primary motivation for their creation concerns the on-going effort in the normal course of business at Elmira, begun well prior to litigation and not in contemplation of it, to appropriately respond to inmate grievances presented through the Inmate Liaison Committee. The nature of these second category printouts thus preclude any work product doctrine protection. *Mercy v. County of Suffolk*, 93 F.R.D. 520, 522 (E.D.N.Y.1982).

Finally, contrary to defendants' contention, the derivation of the second category printouts from the first category documents sent to Barrantes is not controlling, especially in view of the lack of any specific showing that these quite different documents would reveal Barrantes' mental impressions. The focus of the court's inquiry is instead on the "primary motivating" force behind the creation of the documents. It is clear that the primary impetus for the first category documents was the litigation Barrantes faced. It is equally clear that the creation of the second category printouts was for the dominant purpose of assisting Cerio in the normal course of a well established and commendable pattern of business at Elmira Correctional Facility to respond to inmate complaints.

CONCLUSION

The motion to compel discovery of the computer material sent to assistant counsel Barrantes is denied, and a protective order is hereby granted as to it. The motion to compel discovery of the computer material of the second category sent to Richard Cerio is granted as indicated herein.

The foregoing constitutes a decision and order pursuant to 28 U.S.C. § 636(b)(1)(A). The parties should be on notice that, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 37(a)(2), this order shall be final unless within ten (10) days after being served with a copy thereof a party files with the Clerk and serves upon opposing counsel a written appeal specifying the party's objections and the manner in which it is claimed that this order is clearly erroneous or contrary to law.

SO ORDERED.