**262**

In re LATIN INVESTMENT
CORPORATION,
Debtor.

Murray DRABKIN, Trustee of the
Estate of Latin Investment
Corporation, Plaintiff,

v.

L & L CONSTRUCTION ASSOCIATES,
INC., et al., Defendants.

Bankruptcy No. 90–01046.
Adv. No. 91–0084.

United States Bankruptcy Court,
District of Columbia.

Sept. 3, 1993.

Steven P. Hollman, for plaintiff.

Bradshaw Rost, for defendant.

*DECISION RE WAIVER OF WORK–PRODUCT PROTECTION AS RAISED IN PLAINTIFF'S MOTION TO COMPEL*

S. MARTIN TEEL, Jr., Bankruptcy Judge.

This discovery dispute centers on the disclosure of attorney work-product to a third-party accountant who will testify on behalf of the attorney's client both as a fact witness and as an expert witness. Because the court finds that the disclosure here does not warrant waiver of the work-product protection found in Fed.R.Civ.P. 26(b)(3), made applicable in this adversary proceeding by Fed.R.Bankr.P. 7026, plaintiff's motion to compel production of work-product of defendants' attorney will be denied.

■■■ In contrast to the attorney-client privilege, which in the hope of encouraging full and forthright disclosure ensures that communications between attorney and client remain confidential, the work-product protection found in Rule 26(b)(3) ensures that an attorney can prepare a case for litigation without fear that an adversary will discover the attorney's strategy, impressions, or the like. *Jordan v. United States Dept. of Justice,* 591 F.2d 753, 775 (D.C.Cir.1978). The ultimate end sought is not the guarantee of the privacy or protection of the attorney, but the preservation of the integrity of the adversary trial process itself. *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 864 (D.C.Cir.1980). "It is believed that the integrity of our system would suffer if adversaries were entitled to probe each other's thoughts and plans concerning the case." *Id.* In short, the work-product doctrine works "to promote the adversary system by safeguarding the fruits of an attorney's trial preparation from the discovery attempts of the opponent." *United States v. AT & T,* 642 F.2d 1285, 1299 (D.C.Cir.1980) (footnote omitted; emphasis deleted).

■■■ In accordance with the policy underpinnings of the work-product doctrine, waiver of work-product protection results where, because of the circumstances surrounding disclosure to another, it is likely that the contents of the work-product are no longer secret or it would be an abuse of the doctrine to keep them secret. *E.g., In re Subpoenas Duces Tecum,* 738 F.2d 1367, 1371–75 (D.C.Cir.1984); *In re Sealed Case,* 676 F.2d 793, 817–825 (D.C.Cir.1982). But "[a] disclosure made in the pursuit of ... trial preparation, and not inconsistent with maintaining secrecy against opponents, should be allowed without waiver of [work-product protection]." *AT & T,* 642 F.2d at 1299.

In *AT & T* the court rejected limiting disclosure without waiver to only disclosures between co-parties or parties with a similar relationship, but instead looked to the "common interests" of the parties as an important factor militating in favor of allowing disclosure without waiver. 642 F.2d at 1299. In addition, the court observed that a guarantee of confidentiality adds further weight in support of finding no waiver through disclosure. *Id.* at 1299–1300. The disclosure in *AT & T* was between two parties litigating the same claims against a common adversary but on different fronts. The court concluded that disclosure between the two parties was "consistent with the promotion of trial preparation within the adversary system" and, because of the common adversary, posed very little likelihood of the adversary gaining access to the documents through the party to whom disclosure was made. *Id.* at 1300.

The trustee seeks to limit the application of *AT & T* to only those instances where "transferor and transferee anticipate litigation against a common adversary on the same issues or issues," 642 F.2d at 1299, so that "the positions of the parties involved in the exchange were substantially identical as against that adversary," *id.* at 1300 (citation omitted). (Reply Trustee Supp.Mot.Compel, at 7 & n. 1.) The trustee dismisses any possibility of finding a common interest between defendants and their accountant, the firm of Hertzbach, Sapperstein, & Sidle, P.A. The trustee points out that the accountant is not a party to this suit or any other suit brought by the trustee, nor has the trustee ever expressed an intention of asserting claims against the accountant.

The trustee's reading of *AT & T* is too narrow. The focus in *AT & T* was on the

likelihood of disclosure to the transferor's adversary and on the goal of furthering trial preparation. The *AT & T* court looked to the common interests of the transferor and transferee as a strong circumstantial guarantee that the secrecy of the contents of the work-product would be maintained against the transferor's adversary. But in describing the existence of common interests as a factor "relevant to deciding whether the disclosure is consistent with the nature of the work product privilege," *id.* at 1299, as opposed to determinative, the court left open the possibility that other circumstances may be found to provide the same guarantees of secrecy. Later cases have confirmed this, indicating that a promise of confidentiality in itself may be sufficient for a reasonable expectation of confidentiality. *Subpoenas,* 738 F.2d at 1372–74, 1375; *Sealed Case,* 676 F.2d at 820, 823; *Permian Corp. v. United States,* 665 F.2d 1214, 1217–18 (D.C.Cir.1981); *see also United States v. Gulf Oil Corp.,* 760 F.2d 292, 296 (Temp.Emer.Ct.App.1985).

■ What is more important to draw from these cases is that assessing whether a particular disclosure of work-product should be found to be a waiver requires a thorough examination—in terms of the policies behind the work-product doctrine—of all the circumstances surrounding the disclosure. In this case, the court believes that the disclosure of work-product that occurred was consistent with furthering trial preparation by defendants and their counsel, Bradshaw Rost, and was made without much likelihood of disclosure to the trustee.

After the usual haggling, defendants have produced most of the documents the trustee seeks in his motion to compel. As described by the parties at oral argument, the only documents still at issue are two memorandums and correspondence between Rost and defendants' accountant. One of the memoranda ("the first memorandum") Rost prepared when first retained by defendants. In it, through examining each of the numerous transactions between defendants and the debtor, Rost analyzes the strengths and weaknesses of defendants' case. The other memorandum is a draft of a settlement memorandum, derived from the first memorandum. (Rost submitted the final version of the settlement memorandum to the trustee for purposes of facilitating settlement discussions.) In the correspondence, Rost strove to verify the accuracy of his position as to each transaction.

The first memorandum was sent to the accountant on August 12, 1992. The accountant was to examine it before an August 19, 1992 meeting with Rost. The meeting was for Rost's benefit so he could question the accountant about the transactions relevant to his representation of defendants. In sending the memorandum, Rost explained that it was confidential and privileged work-product, that it could not be photocopied or shown to anyone else, and that it must be returned to him after the August 19, 1992 meeting. After the meeting, the first memorandum was returned to Rost. Rost later sent the accountant a draft of the settlement memorandum, along with a couple of factual questions. The accountant returned this memorandum to Rost. Both documents were in Rost's possession in early September. The third category, the correspondence, ensued after the August 19, 1992 meeting and continued until the end of the year as Rost's preparations for litigation went forward.

Here, the purpose behind the disclosure of work-product was to further Rost's defense of his clients. Indeed, as Rost argued, he would have been remiss if he had failed to consult with the accountant. The accountant was the entity best qualified to assist Rost in his preparation of this case which centers on a multitude of financial transactions. There is no indication the disclosure was motivated by any purpose other than preparation for trial. *Santiago v. Miles,* 121 F.R.D. 636, 640 (W.D.N.Y.1988); *Bloch v. Smithkline Beckman Corp.,* No. 82–510, 1987 WL 9279, at *4, 1987 U.S.Dist. LEXIS 2795, at *8 (E.D.Pa. April 9, 1987); *compare Westinghouse Elec. Corp. v. Republic of Philippines,* 951 F.2d 1414, 1429 (3d Cir.1991); *Subpoenas,* 738 F.2d at 1372; *Sealed Case,* 676 F.2d at 819.

That Rost chose to use his work-product as a means of facilitating consultation with the accountant should not result in its waiver. The work-product doctrine exists to encourage an attorney to commit thoughts to paper

in the view that this is often the most efficient way to prepare for trial. *Coastal Gas,* 617 F.2d at 864. Granted, Rost could have refrained from showing the accountant the actual work-product documents, instead crafting oral questions that might have achieved the same ends. But to require that here where a multitude of transactions spanning a five-year period are at issue would have been grossly inefficient and apt to lead to unnecessary confusion over who did what when. Thus, the court finds that disclosure was fully consistent with the purpose behind the work-product doctrine.

The court further finds that there were circumstantial guarantees of confidentiality. First, the accountant and defendants had interests in common sufficient to guarantee nondisclosure to the trustee. The accountant had worked for defendants over the periods of time covered by the trustee's suit. During that time, the accountant prepared defendants' financial statements and tax returns, and served as a business advisor. The trustee's suit covers this time period. It is based in part on the numerous transactions the accountant had evaluated in performing services for defendants. But more importantly, the trustee's suit is based in part also on defendants' participation with the debtor's principals in fraud against the debtor. To the extent the accountant had any role in that fraud it faced potential liability to the debtor. Numerous cases exist confirming this fact. *E.g., Schacht v. Brown,* 711 F.2d 1343 (7th Cir.), *cert. denied,* 464 U.S. 1002, 104 S.Ct. 509, 78 L.Ed.2d 698 (1983); *In re Investors Funding Corp.,* 523 F.Supp. 533 (S.D.N.Y.1980). (That the trustee presently disavows any intention of asserting a claim against the accountant is irrelevant; what is important for purposes of assessing common interests is that the trustee might be able to assert such a claim.)

Moreover, the accountant is to testify on defendants' behalf as a key factual witness as to the accuracy of its financial analyses and as an expert witness as to their quality. In establishing his case, the trustee will be called on to attack the accountant's testimony. In particular, the trustee will have to call into question the competency of the accountant's endeavors. To win, the trustee will have to demonstrate that the accountant is simply wrong with respect to the conclusions drawn in its analyses of defendants' financial affairs. In these circumstances, the likelihood of the accountant disclosing Rost's work-product is remote.

Finally, there was an explicit guarantee of confidentiality as to the first memorandum, which carried over to the draft of the settlement memorandum. In disclosing the first memorandum, Rost demanded confidentiality and obtained it by retrieving that document. While there is no indication that Rost demanded that the contents of the draft of the settlement memorandum be kept secret, he did demand, and obtain, its return. These circumstances weigh heavy in favor of finding there has not been a waiver.

There is no indication whether the correspondence at issue here has been returned to Rost; presumably, the accountant still possesses those letters sent by Rost. Nonetheless, because of the common interests between defendants and the accountant, there is no danger that the accountant will deliver the correspondence in its possession to the trustee.

The trustee's main complaint, as developed at oral argument, is that the accountant will testify as a factual witness, yet through exposure to Rost's work-product, the accountant's testimony may have been improperly influenced. To determine whether this is so, the trustee argues, he needs to examine the documents reviewed by the accountant.

First, as is noted above, but must be emphasized here, there is no evidence that Rost provided the work-product in the hope of influencing the accountant's testimony. In fact, before the deposition of the accountant in November 1992, Rost told the accountant's representative, Donald N. Hoffman, not to review any documents before giving his testimony. Before the deposition, Hoffman assembled an exhibit consisting of what he thought were the most important documents. Assembling this involved reviewing documents he or his firm prepared, as well as the underlying documents. (Hoffman could not review the first memorandum or the draft of the settlement memorandum, which had both

been returned to Rost by early September 1992.) In giving his deposition testimony, Hoffman reviewed only his work papers and the financial statements. As a result, at the time of the deposition, foremost in Hoffman's mind would have been his conclusions and assessment of the underlying facts as drawn from his own work-product, and not from Rost's work-product. This conclusion jibes with Hoffman's inability to remember whether he had ever seen any of Rost's work-product.

It must further be observed that this is not an attempt to retrieve documents under Fed. R.Evid. 612 governing the use of a writing to refresh a witness' memory and made applicable in these proceedings by Fed.R.Bankr.P. 9017. But even if it were, "Rule 612 ... does not displace the protections of Fed. R.Civ.P. 26(b)(3)." *Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 595 n. 3 (3d Cir.1984) (citations omitted).

The trustee's complaint about disclosure influencing testimony does not really go to the likelihood of disclosure or the existence of common interests. Rather, this complaint is more properly directed at the need for the documents disclosed and the potential for hardship if deprived of them. Richard L. Marcus, *The Perils of Privilege: Waiver and the Litigator*, 84 Mich.L.Rev. 1605, 1647 (1986); Gene Lynn Humphreys, Note, *Whether Disclosure of Work Product to a Witness in Preparation for Testifying Waives the Protection of Federal Rule of Civil Procedure 26(b)(3)*, 76 Ky.L.J. 479, 492, 495–95 (1987–88); *The Work Product Doctrine*, 68 Cornell L.Rev. 760, 891 (1983); *id.* n. 804 (citing cases); *see Bloch*, 1987 WL 9279, at *3–4, 1987 U.S.Dist. LEXIS 2795, at *8–9.

■ Because the work-product here reveals Rost's assessment of defendants' case, it must be considered core work-product. Rarely are documents containing core work-product ordered to be produced. To obtain their production, the trustee must make "a far stronger showing of necessity and unavailability" than simply showing "substantial need and inability to obtain the equivalent without undue hardship" as "articulated in the first part of Rule 26(b)(3)." *Upjohn Co.*

*v. United States*, 449 U.S. 383, 401–02, 101 S.Ct. 677, 688–89, 66 L.Ed.2d 584 (1981).

■ That showing cannot be met here. There is no evidence that exposure to these documents influenced Hoffman's testimony at his deposition. Before such a finding can be made the trustee has to demonstrate that Hoffman relied on the documents in some fashion. *Cf. Sporck v. Peil*, 759 F.2d 312, 318 (3d Cir.), *cert. denied*, 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985); *United States v. Wright*, 489 F.2d 1181, 1189 (D.C.Cir.1973). The trustee has not demonstrated any such reliance. At his deposition, Hoffman could not remember whether he had reviewed any of Rost's work-product. Thus, the most that can be said is that Hoffman might have been influenced by the documents. In this respect, Rost has represented that Hoffman had not reviewed the first memorandum before the August 19, 1992 meeting. This means Hoffman's exposure to the work-product in that memorandum was minimal, being limited in extent to the duration of his meeting with Rost. That Hoffman cannot unequivocally state he did review the documents shows that to the extent he was influenced by the documents (assuming he did review them) it could not have been to any great degree. Indeed, in his opposition and at oral argument Rost represented that several of the positions taken by Hoffman in his deposition testimony were at odds with positions advanced in the work-product now at issue. (Dfts.Opp.Mot.Compel, at 35–36.) Absent some proof that Hoffman relied on the documents in giving his testimony, the trustee cannot make the showing required for production under Fed.R.Evid. 612, *see id.*, much less the showing required under the second part of Fed.R.Civ.P. 26(b)(3).

As for basic concerns of fairness, in the absence of some proof of reliance, there is no real cause for concern that the trustee was hampered in his cross-examination by not having access to the work-product disclosed. Before the deposition began, the trustee had been provided all of the accountants' working papers and all of the underlying documents. At the same time, defendants had provided the trustee a detailed settlement memorandum laying out their position on each of the

transactions at issue. After studying this information, the trustee, in deposing the accountant, should have been able to expose any areas of influence over the accountant "through his own wit; and not through the wit of his adversary." *Sporck,* 759 F.2d at 318–19. The same applies to the trustee's ability to discover any relevant knowledge of defendants' actions from the accountant (and supposedly disclosed in the work-product documents). In these circumstances, an order compelling production would be inappropriate.

Finally, the court rejects the trustee's argument that Rost cannot assert work-product protection because he filed his objections to production of documents 5 days late. *See* Bankr.D.D.C.R. 9(d). The purpose of filing objections is to put the other party on notice so that a motion to compel can be filed. The trustee was on notice well before the objection deadline and thus cannot say he suffered any prejudice by the late filing.

The court also rejects the parties' respective arguments for an order to show cause and for an award of attorney's fees. Nothing indicates either party filed their pleadings in this discovery dispute in bad faith. The issues dealt with in this decision are difficult. The confusion over the documents eventually produced without court decision is understandable given the complexities of this case and the vigorous fashion in which it is being litigated. The court is satisfied that the parties worked this aspect of the dispute out for themselves. To the extent unnecessary expense was incurred, it resulted from a failure of communication and cooperation. For that failure, each party is to be blamed equally and should bear its own costs.

### CONCLUSION

For the foregoing reasons, it is

ORDERED that the trustee's motion to compel production of documents from defendants and their accountants is denied for those documents whose production is still at issue as discussed in this decision; and it is further

ORDERED that the parties' cross-motions for an order to show cause and for an award of attorney's fees and expenses are denied.